PRESIDENT, DIRECTORS AND COMPANY OF THE CABOT BANK *vs.*
RICHARD T. MORTON & another, Administrators.

A person, who procures notes to be discounted by a bank, impliedly warrants the genuineness of the signatures of the makers and indorsers; and such implied contract is not a representation concerning the character, credit or ability of another, within the statute of frauds.

A director of a bank who procures notes to be discounted at the bank, if he acts in his individual capacity, impliedly warrants the genuineness of the signatures; and has no ground of exception to a refusal to instruct the jury, in an action on such a warranty, that if the making of the discounts was partly in consequence of his being a director, the implication of warranty would not arise.

One who procures notes to be discounted at a bank is not the less responsible for the genuineness of the signatures because he does it as agent of another, unless the bank knew or had reasonable cause to know his agency.

Evidence that a person, procuring notes to be discounted by a bank, said, when offering them for discount, that they were good, and in case of nonpayment he would see them paid, is no evidence of a waiver by the bank of the implied warranty of the genuineness of the signatures.

ACTION OF CONTRACT against the administrators of the estate of Theodore Sheldon, to recover the amount of two promissory notes discounted by the plaintiffs at the instance of Sheldon. The declaration averred that Sheldon presented to the plaintiffs for discount the notes, purporting to be both signed by Zenas Cook, and to be indorsed, one by Levi Russell, and the other by George Shipman, the payees named therein respectively; and represented, warranted and agreed that the notes and indorsements were good and genuine, and that he had good title to the notes and right to transfer them to the plaintiffs; and, undertaking and pretending to transfer to the plaintiffs a good title in the notes, by the pretended indorsements, and by delivering the notes to the plaintiff, did receive of the plaintiffs the full amount of the notes, deducting the legal discount thereon; that the indorsements were not genuine, but were forged, and Sheldon had no title, and transferred none to the plaintiffs.

The defendants demurred to the declaration, because it did not state a legal cause of action; and because the facts stated did not, in point of law, support the action.

The argument upon the demurrer was had at Boston in January 1855.

*C. P. Huntington,* for the defendants.

*J. Wells,* for the plaintiffs.

SHAW, C. J. The question here is, whether the plaintiffs in their declaration have set forth any legal cause of action. The action proceeds on the ground of contract—of an implied stipulation, growing out of the nature of the transaction, that the signatures of the names of the parties, borne on the notes, were, as they purported to be, their real and genuine signatures, so that the notes were entitled to all the credit due to them in case such signatures were real and genuine. Both parties must be presumed to understand the law; both therefore must have known that, if the indorsements were genuine, the indorsers would be conditionally liable for the payment; otherwise, not.

The case does not proceed on the ground of fraud; it does not suggest that the intestate had any knowledge of the forgery, or any purpose wilfully to utter and pass a forged security. The citation of the Rev. Sts. *c.* 74, § 3, providing that no action shall be brought to charge any person by reason of any false representation of character or credit of another, unless made in writing, has no relevancy to the present case; it refers to an action of tort for a false representation. Besides, here was no representation or assurance concerning the character, conduct, credit, ability, trade or dealings of these indorsers; but if any representation at all, it was a representation that they had in fact indorsed the notes; if so, their liability was a mere conclusion of law.

Looking at the case in this point of view, it seems to fall under a general rule of law, that, in every sale of personal property, the vendor impliedly warrants that the article is in fact what it is described and purports to be, and that the vendor has a good title or right to transfer it. In the present case, it will be perceived that the plaintiffs not only failed to obtain the responsibility of the indorser—say Levi Russell; they failed to obtain the responsibility even of the promisor, whose signature was genuine. The note was payable to the order of Russell; nobody else could indorse or transfer it, or make legal title to it. He did not indorse it, and of course he conveyed no title to anybody to claim it of the promisor.

The principle stated was held, in an early case in Massachusetts, to apply beyond all question to an implied warranty of private notes, and was there adjudged to extend to bank notes, though by usage they pass as cash. *Young* v. *Adams*, 6 Mass. 182. So in New York. *Markle* v. *Hatfield*, 2 Johns. 455. *Herrick* v. *Whitney*, 15 Johns. 240. *Canal Bank* v. *Bank of Albany*, 1 Hill, 287. *Talbot* v. *Bank of Rochester*, 1 Hill, 295.

But the same point was directly decided as a rule at common law in a case of great authority; it was placed on the ground that, where a bill was discounted as genuine, which turned out to be forged, both parties being equally innocent, having equal knowledge and equal means of knowledge, the money was recoverable back as money had and received. *Jones* v. *Ryde*, 5 Taunt. 488. The same rule has been recognized as existing law in subsequent cases. *Wilkinson* v. *Johnson*, 3 B. & C. 428.

The court are therefore of opinion that the declaration in the present case does set forth a good cause of action, and that unless something further is shown by way of defence, the plaintiffs are entitled to recover. *Demurrer overruled.*

The defendants were permitted to withdraw the demurrer, and to file an answer, and a trial was had at September term 1855, at Springfield, before *Bigelow*, J., and resulted in a verdict for the plaintiffs; and the case came before the full court on a report of the presiding judge.

*Huntington*, for the defendants.

*Wells*, for the plaintiffs.

SHAW, C. J. The main facts as they now appear do not essentially vary from those on which the foregoing opinion was given. Two or three additional facts are shown in evidence, upon which points have been raised and argued.

It now appears that Sheldon, the defendants' intestate, was one of the directors of the plaintiff bank; that he brought the note to the bank to be discounted; that the negotiation was conducted between Sheldon and the cashier; and the cashier testified, in the course of his examination, as follows: " I did these, [discounted the notes,] partly because he was a director, and I

had confidence in him, and knew he was able to take care of the notes. Should have done it in any case, where I had confidence in the person offering the note."

In reference to this evidence, the defendants contended, and requested the court to instruct the jury, that if the making of the discounts was partly in consequence of Sheldon's being a director, the implication of warranty would not arise. The court declined so to instruct the jury, but left it to the jury to find on the evidence, whether he acted in his official or individual capacity; if in the former, the implication of warranty did not arise; if in the latter, the fact of his being a director would make no difference.

This direction is plainly founded on a maxim, too familiar to everybody to require being formally stated and explained, that a corporation is a person in law, distinct from all the members composing it, and, of course, may contract with one of its own members, as well as with any other distinct parties. And a man is not the less a member of such corporation, and capable of making a contract with it, because he is a director or holds an office in it. Here there was in fact a contract made by somebody with the bank, to obtain money on discount, on a certain security offered, on the one side; and a contract by the bank, by some agent or agents—for a corporation can only act by an agent—to lend money on the same security, supposing it to be what it purported to be, on the other side; and this was executed by the receipt of the note and payment of the money. That Sheldon participated in making this bargain was conceded. Then the question was this: Did he act for the bank, in contracting to lend money to some person; or did he contract with the bank to borrow money for himself or somebody else? The bargain must have had two sides to it, and he must be on one side or the other. He could not be borrower and lender of the same money, nor could he be partly one and partly the other. The relation implies opposition, so that the affirmance of one is the negation of the other. The effect of the instruction, we think, was, that if Sheldon was a borrower or acting for a borrower, then the responsibility would attach to him, as to any other

distinct party, dealing with the bank; but if, on the contrary, he was acting in his official capacity for the bank, in making a loan to a third party, he would not be responsible, on an implied warranty, for the genuineness of the notes; and this we think was strictly correct.

Another point raised upon this report is, that Sheldon was acting as a mere agent in this transaction, and that this must have been known to the plaintiff, and therefore there was no implied warranty on the part of Sheldon personally. Upon this point the court instructed the jury, according to the defendant's request, that if Sheldon was an agent, and disclosed his agency, or his agency was known to the plaintiffs, or they had reasonable cause to know it, he would not be liable; otherwise, he would be liable, as if he had procured the discount for his own use.

This direction was sufficiently favorable to the defendants. The fact that a party acts as agent without disclosing his agency does not prevent him from being treated as a principal by the party with whom he deals, he himself having chosen so to deal. *Fuller* v. *Smith*, 1 Car. & P. 197. *Canal Bank* v. *Bank of Albany*, 1 Hill, 287. *Gurney* v. *Womersley*, 4 El. & Bl. 133. The last case cited is very recent, and a direct authority for the present decision on both points.

The counsel for the defendants suggests that the instructions on the point of agency were deficient, in not directing the jury what evidence would justify them in finding that there was reasonable cause for the plaintiffs to believe Sheldon's agency, or what would constitute such agency. When it is urged that reasonable ground to believe that Sheldon acted as agent would exempt him personally, we suppose it is not intended to maintain that it is enough that they had ground to believe that he was agent for somebody, but for some particular person specifically, for whom he was authorized to act, and whom he had power to bind by his contract, so that the implied warranty actually made was not the contract of the agent, because it was the act and contract of the principal who was bound by it.

Taking this to be the effect of the instruction—and any other

we think would be incorrect—no request appears to have been made for more particular instructions upon this subject, and no evidence appears in the report to call for such instructions. The evidence, as far as it appears, is, that Sheldon brought the note to the bank ; that the negotiation took place between him and the cashier, acting for the bank ; that. the notes were discounted in pursuance of that agreement, and the proceeds paid to Sheldon or carried to his credit. If there was any evidence requiring further instructions, they should have been called for.

There is one other point taken by the defendants, which seems to require a remark. The point taken is this; that the plaintiffs, by requiring a parol assurance and promise as to the solvency of the parties, waived any implied warranty of the genuineness of the signatures. It does not appear that such a stipulation was required, or that it was regarded as a necessary part of the contract. The cashier testifies that, on presenting the notes, Sheldon said they were good; that, in case of nonpayment, he would see them paid. But suppose the parties did regard this as a part of the contract, whether valid in law or not, does it not distinctly imply that both parties considered the notes genuine, and that both acted under that assumption ? Of what use to the plaintiffs would be the solvency of the parties whose names were borne on the notes, if they never signed them ? Whether the assurance in question was a representation or a promise, so far from carrying an implication that the plaintiffs waived Sheldon's liability for the genuineness of the notes, it seems to us, not only to be consistent with such implied warranty, but a recognition of it as the only condition to give it any value.            *Judgment on the verdict for. the plaintiffs.*