INSURANCE CO. OF NORTH AMERICA v. FOURTH NAT. BANK OF ATLANTA.

(District Court, N. D. Georgia. July 22, 1926.)

No. 621.

**1. Banks and banking ☞320.**

Bank receiving drafts through clearing house for collection *held* not to collect the same as owner, but as agent for owner bank, and not responsible for genuineness of indorsements.

**2. Principal and agent ☞136(4)—Agent not liable for return of money wrongfully collected which, without notice, he has paid over to principal.**

An agent who, before notice, has paid over money collected to his principal, is not liable for return of the money in action for money had and received, though neither he nor his principal was entitled to collect it.

**3. Banks and banking ☞320—In view of clearing house rules and practice, bank taking up and presenting drafts for payment, at request of drawee, held not a holder and not warrantor of genuineness of indorsements.**

Plaintiff insurance company made an arrangement with defendant bank by which drafts drawn on plaintiff for insurance losses stated on their face that they were to be presented through defendant bank. Defendant received them through the clearing house, and under its rules paid for them, and on presentation they were duly paid. *Held* that defendant did not present them as owner, and assumed no liability with respect to them or as to the genuineness of indorsements thereon.

At Law. Action by the Insurance Company of North America against the Fourth National Bank of Atlanta. On demurrer to amended answer. Sustained in part, and overruled in part.

Smith, Hammond & Smith and J. M. B. Bloodworth, all of Atlanta, Ga., for plaintiff.

Hoke Smith, Brandon & Hynds, and Little, Powell, Smith & Goldstein, all of Atlanta, Ga., for defendant.

SIBLEY, District Judge. The pleadings ruled upon in the former opinion in this case (12 F.[2d] 100), treated the defendant bank as the holder of the several drafts bearing forged indorsements, which were paid by the plaintiff insurance company. The pleadings have now been amended to set up facts under which it is claimed that the defendant, in presenting the drafts, was not their holder, nor ostensibly such, but was, under the operation of clearing house rules and practices, which were well known to the plaintiff, the agent of the holder which had brought the drafts to the clearing house, or at most was an indorsee for collection and therefore an agent, and that, furthermore, by a specific agreement, it was receiving and presenting the drafts in behalf of and at the request of the plaintiff, without any of the implications as between them that would obtain otherwise. Elaborate demurrers have been argued, some of them as to portions of the amendment being argumentative and mere conclusions are well taken, but it will be sufficient to treat such portions of the pleadings as setting forth the contentions of the defendant, and treating as facts admitted by the demurrer only those allegations that directly allege ultimate facts. The facts here pleaded, in addition to those set forth in the former opinion, may be thus summarized:

Defendant is a member of an association of Atlanta banks called "the Atlanta Clearing House." Pursuant to rules so providing, the member banks, after each day's business, collect checks and drafts to be presented to or through other banks in Atlanta and stamp each, "Paid through Atlanta Clearing House," with date and signature of the holder bank. The following day, at 10:30 a. m., these are all carried to the clearing house, where the items for each bank are gotten together and listed and delivered to it, checks being given to cover balances due. Each bank then takes the items thus charged against and delivered to it, without any indorsement save the paid stamp above described, and, at its own office, examines and passes upon the checks drawn on it, and makes presentation of drafts which are drawn on others. At 1:30 p. m. a second meeting is held at the clearing house at which any bank may return any items received that morning, for any reason or without reason, whereupon the paid stamp is erased and the item given back to the bank which first had it, which settles for it with the bank returning it. If an item is not returned at the 1:30 meeting, it is deemed accepted by the bank to which it was given at 10:30, and the payment then made for it is deemed final.

Each of the drafts in controversy came to the defendant bank and was handled and settled for in this way. Before any of them were so handled, however, the plaintiff approached defendant to arrange for all drafts on itself to pay insurance losses to be presented through defendant, and an agreement was made in pursuance of which plaintiff wrote defendant an exhibited letter acknowl-

edging some of the terms of the agreement. The arrangement was that each such draft should bear the direction, "Present through Fourth National Bank, Atlanta, · Ga." In view of the clearing house practices, defendant was to take to plaintiff all drafts coming to it in one batch each day, with sufficient time allowed for plaintiff to examine them and return such as it might decline and give check for such as it might honor as near noon as possible, and that with funds so furnished defendant would pay for such drafts as were directed by plaintiff to be paid, and that with the returned drafts it would, at the 1:30 meeting, relieve its liability in the clearing house for them. Under this arrangement all of the drafts in dispute were dealt with, defendant not owning them or having any interest in any of them otherwise.

[1] Dealing first with the clearing house transactions alone considered, it is plain that the paid stamp is not and is not intended to be an indorsement of the paper to which it is applied. Dedham National Bank v. Everett, 177 Mass. 392, 59 N. E. 62, 83 Am. St. Rep. 286; Security Bank v. Southern Trust & Commerce Bank (Cal. App.) 241 P. 945. It does not purport to transfer the title of the holder bank to the bank to which it is charged, but, in anticipation that the item will be paid, it is so marked and a tentative settlement is made for it at the 10:30 meeting, when the item thus received is delivered to the paying bank. Both the payment and delivery are conditional, as in the case of goods sold on approval. If the item, whether a check on the bank taking it, or a draft to be collected from another, be returned at 1:30, all that was done about it stands canceled. The transaction is not rescinded, but stands annulled by its own terms. This necessarily results from the unrestricted right to return. When the bank received and tentatively paid for one of these drafts on its face to be presented through it, it became in no sense the owner of it prior to 1:30 p. m. The draft did not on its face appear to belong to defendant, no apparent benefit was to accrue to defendant by presenting it. It would seem that such presentations are made by a member of the clearing house in reciprocation of similar service done for themselves. The receipt of payment upon the draft when presented to plaintiff was signed by Fulton National Bank. The plaintiff should have understood thereby that defendant was presenting the receipted draft for the receipting owner, rather than that defendant was the owner and prepared to give acquittance as such. As·the paper stood, it was a dead paper, and not one which the defendant, as. owner, could have

put into further circulation in lieu of presenting it for redemption.

[2] In the absence of evidence of a contrary intention or custom in the clearing house, and giving natural and logical effect to the entry upon the drafts, I must hold that until 1:30 p. m. the draft belonged to Fulton National Bank; that in presenting it before that time the defendant acted ostensibly and really for Fulton National Bank, whose receipt it was offering to deliver to plaintiff. This being true, the transaction of presentment for payment was between Fulton National Bank and plaintiff. The defendant was only an agent, known to be such. The implied warranties as to the indorsements were those of the Fulton National Bank. No action lies upon them against the agent. United States v. American Exchange Bank (D. C.) 70 F. 232; Wells Fargo & Co., v. United States (C. C.) 45 F. 337; Worthington v. Cowles, 112 Mass. 30; Cabot Bank v. Morton, 70 Mass. 156. Moreover, since the defendant has not retained any of the benefits of the transaction, but, on the strength of the checks given it by plaintiff, it has suffered its tentative payments for the drafts in the morning to stand, an action for money had and received will not lie. An agent who, before notice, has settled with his principal, cannot be so held, though neither he nor the principal was entitled to collect the money. The responsibility attaches to the principal. 2 C. J. 812; Williston on Contracts, § 1695; Hooper v. Robinson, 98 U. S. 528, 25 L. Ed. 219; McDonald v. Napier, 14 Ga. 89; Citizens' Bank v. Rudisill, 4 Ga. App. 37, 60 S. E. 818; Mowat v. McLelan, 1 Wend. (N. Y.) 173; Archibald & Lewis v. Banque, 216 App. Div. 322, 214 N. Y. S. 366.

[3] If the allegations of the amendment be true, defendant did not receive these drafts because it was in the banking business and for its advantage, but because, for some reason, plaintiff wished it to assemble all plaintiff's drafts together and permit payment through defendant. But for the direction printed by agreement on the drafts to present them through defendant, possibly none would ever have come that way. The presentation was to be not *by* the defendant but *through* it, and this is some evidence that plaintiff did not consider that defendant was to assume the role of presenting holder. The careful stipulations as to the hour by which acceptance and rejection of them was to be accomplished, made in view of the clearing house practices, tend further to show that it was not contemplated that defendant was to buy and own any of the drafts, or assume any final liability for them. The pleaded conclusion that defendant was to act rather as the

plaintiff's agent or broker to gather in and handle the drafts in order to convenience the plaintiff is not an unreasonable construction to place on the whole situation, and is one that a jury might well conclude was the real intention of the parties. If it was, the transactions were with Fulton National Bank rather than with defendant. Defendant would not be the presenting holder of the drafts any more than the plaintiff's bookkeeper would be if the plaintiff had requested that the drafts be presented through the bookkeeper, and this notwithstanding the bookkeeper had been required by the holders to deposit the value of the drafts with them before they would trust him with them for presentation. I therefore hold that the amendment pleads facts sufficient to afford a defense.

The paragraphs numbered 18 to 28, inclusive, seem to be but an amplification of the contention of negligence on plaintiff's part, which was dealt with in the former opinion. If defendant was not the presenting holder of the drafts, it is not liable. If it was, its liability exists, irrespective of the negligence of plaintiff, as heretofore ruled. The claim of negligence in plaintiff is irrelevant in either event. The contention that the drafts were to be for insurance losses seems to me to be without weight. These drafts were supposed by the parties to be such. That they were not actually was a fraud on the insurance company, the loss by which it must have borne had the indorsements been genuine. It is not apparent how this want of consideration for them operated as a fraud on the presenting holder. The agreement that the drafts would be for actual losses is no stronger than the statement in each draft that it was for such. Neither absolves a presenting holder otherwise liable from his responsibility for the chain of indorsements under which he claims the right to collect the money. These paragraphs will be stricken as pleading irrelevant facts and insufficient to constitute a defense.

Orders may be had accordingly.