CHRISTOPHER WHITNEY vs. CYRUS H. BECKFORD & another.

A. bought goods on B.'s order; sent a bill of parcels of them to B., describing himself as a produce commission merchant, stating that they were bought on B.'s account, and charging a commission; annexed a bill of lading of them, made to his own order and indorsed in blank, to a draft on B. for their price; and sent the draft through a bank for presentment to B. B. accepted the draft, and the bill of lading was given up to him. *Held,* that the relation between B. and A. was that of principal and agent, not of buyer and seller; that the general property in the goods vested in B. on their purchase; and that a delivery of them to a third person by A., although before the acceptance of the draft by B., passed no title.

A factor, who had bought goods for his principal residing at W., sent them by mistake to a third person residing at S., who received them in good faith and paid the freight. *Held,* that in estimating damages in an action by the principal against this person for the conversion of the goods, the defendant was entitled to a deduction of the amount of the freight paid by him.

TORT against Cyrus H. Beckford and Hannibal Dodge, partners under the name of Beckford & Dodge, for the conversion of a car load of middlings.

At the trial in the superior court, before *Dewey,* J., it appeared that the plaintiff, a dealer in flour and grain at Westborough, having ordered of Rice Brothers, produce commission merchants at Milwaukee, a car load of middlings, Rice Brothers shipped the middlings at Milwaukee on November 20, 1868, by the Chicago and Northwestern Railroad, taking therefor a bill of lading bearing that date, signed by the railroad company, and stating that the middlings were received from Rice Brothers at Milwaukee consigned to the order of the same firm, of Chicago; that Rice Brothers, upon said shipment, indorsed the bill of lading in blank, and drew a draft on the plaintiff dated November 20, 1868, against the middlings for the sum of $267.02, payable at sight to the order of Rice Brothers, and by them indorsed in blank, said sum being made up of $260.50, the amount paid for the middlings, and $6.52, commissions charged by Rice Brothers for purchasing and shipping the same; that Rice Brothers delivered the bill of lading and draft, both so indorsed and annexed to each other, to a bank at Milwaukee on the same day, and the bank on the same day forwarded the draft and bill of lading annexed to the First National Bank of Westborough, the draft for acceptance and collection, and the bill of lading for the plaintiff; that the draft and

bill of lading reached Westborough in due course of mail on November 24, 1868, and on the same day were presented by the cashier of the First National Bank of Westborough to the plaintiff; that the plaintiff thereupon accepted the draft, and the cashier at the same time delivered to him the bill of lading; that Rice Brothers also on November 20, 1868, signed the following bill of parcels: "Milwaukee, November 20, 1868. Bought for account of C. Whitney, Westborough, Mass., by Rice Brothers, produce commission merchants and buyers for eastern account of grain, flour, provisions, wool, seeds, hops, &c., November 20, 1868, 1 car Fine Middlings, $260.50. Commission, $6.52," which bill of parcels was forwarded by them by mail to the plaintiff at Westborough in a letter advising him of the purchase of the middlings for him; that this letter and bill of parcels were received by the plaintiff by the same mail which brought the bill of lading and draft; and that on November 27, 1868, the draft was protested for nonpayment, but within two or three weeks afterwards was paid by the plaintiff to the First National Bank of Westborough.

It also appeared that the middlings arrived at Chicago on November 21, and were there, by order of William H. Rice, a member of the firm of Rice Brothers, taken from the car in which they were originally shipped, transferred to another car, directed to "Account W. H. Rice, notify Beckford & Dodge, Salem, Mass.," and carried by this car to Worcester, where, in pursuance of said direction, they were transferred to a car of the Worcester and Nashua Railroad Company, in which they were carried to Salem and there received by the defendants on December 4, 1868, without notice on their part of the transactions between Rice Brothers and the plaintiff; that, before the transhipment of the middlings by William H. Rice at Chicago, the defendants had ordered from Rice Brothers, at Chicago, a car load of bran, an article worth about one half as much as said middlings; that William H. Rice on November 23, 1868, took a bill of lading of that date in his own name for the middlings, consigned to the order of "W. H. Rice, Salem, Mass., notify Beckford & Dodge," which bill of lading was indorsed by William H. Rice in blank and forwarded

to the defendants at Salem; that afterwards William H. Rice drew on the defendants a sight draft for $142.31, the same being the price of a car load of bran, which draft was subsequently paid by the defendants, and was supposed by them at the time to be in payment for the property in question; that the plaintiff, after finding that the middlings had come to the hands of the defendants, demanded the same of them at Salem, and the defendants refused to give them up; that the entire freight from Milwaukee to Salem, amounting to $191.50, was paid by the defendants at the time they received the middlings; and that the freight from Milwaukee to Westborough would have amounted to $160.

The plaintiff contended that the measure of damages was the market value of the property at Salem. The defendants contended that the measure of damages, if the defendants were liable, was the market value of the property at Chicago; and also, that, if the market value of the property at Salem was the measure of damages, they had a right to have the amount paid by them for freight deducted therefrom.

The questions of law arising upon the foregoing facts were, by agreement of the parties, reported for the consideration of this court; "if the plaintiff is entitled to recover, and the measure of damages is the market value of the property at Chicago, judgment to be rendered for the plaintiff for the sum of $267.02, and interest from November 24, 1868; if the measure of damages is the market value of the property at Salem, the case to be sent to an assessor to determine the market value at Salem, and judgment to be rendered for the plaintiff for the same, with or without deduction for the freight paid by the defendants, as the court may determine; if the plaintiff is not entitled to recover, judgment to be rendered for the defendants."

*H. B. Staples & W. F. Slocum*, for the plaintiff.

*G. F. Verry*, for the defendants. The title was not intended to pass, and did not pass to the plaintiff, till his acceptance of the draft and the delivery to him of the bill of lading; but before such acceptance and delivery there had been a good delivery to the defendants by a shipment to them and the indorsement and forwarding to them of the bill of lading. The delivery of the

bill of lading to the plaintiff cannot relate back to the time of its indorsement. At any rate the defendants are entitled to deduct the freight.

COLT, J. If the controversy in this case were between two parties claiming the same personal property as purchasers from a former owner, its determination might depend upon ascertaining which first obtained actual or constructive possession of the goods by delivery from the seller, and the points made by the defendants would then require consideration. *Merchants' National Bank* v. *Bangs*, 102 Mass. 291.

The facts reported show that the relation of buyer and seller did not exist in the transaction between the plaintiff and the firm of Rice Brothers in Milwaukee. They were his agents to purchase, and bought upon his order; they advised him of the purchase on the day it was made, and inclosed in the letter to him a memorandum or bill of parcels, in which they state that they are produce commission merchants and buyers of grain, &c., for eastern account, describing this property as bought for his account, and charging him with their commissions in the purchase. There is nothing in the other facts stated inconsistent with the relation of principal and agent thus recognized. The general ownership of the goods so bought was in the plaintiff indeed, but, as factors for their purchase, Rice Brothers had a lien on them for the money paid and liabilities incurred in respect to such purchase. They were not required to part with their possession, or to deliver them to the principal, or to a common carrier subject to his absolute control, unless their advances and charges were paid or secured to their satisfaction. A bill of lading was accordingly taken by the firm for the property, consigned to their own order, indorsed in blank by them, and annexed to a draft on the plaintiff for the amount of the purchase money and their commissions, which was forwarded through the banks for acceptance. There vas no implied assertion in this of general property in the goods consigned. It was a proper course to take to protect their special property and preserve the lien in their favor against the general owner. To this extent it might be effectual. It gave them no right to assert absolute ownership over it, or to change its destina-

tion by sale to other parties without notice to the general owner and without default on his part. *Doane* v. *Russell*, 3 Gray, 382, 386. The draft was duly accepted and the bill of lading delivered to the plaintiff, and there can be no question that on the payment of their claim the special property of the agents terminated. The interference of one of the firm with the property, on its arrival at Chicago, seems to have been by mistake as to its identity; but whether intentional or not, it would not defeat the plaintiff's title.

The refusal of the defendants to deliver the goods upon the plaintiff's request was a conversion by them at Salem, and the plaintiff is entitled to recover their value at that place. But as the defendants paid the freight from Milwaukee to Salem in good faith, and discharged the goods from a lien therefor in favor of the carrier, to which they were subject as against the plaintiff himself, the amount so paid must be deducted from the value as a payment which enured to his benefit.

The plaintiff urges against this rule of damages, that the property was carried to Salem without authority from him; that no freight charges, as against him, could be earned upon it; and that no debt was discharged by the defendants for which he was liable.

A carrier who receives goods from a wrongdoer, without the consent of the owner, express or implied, can certainly have no right to detain them against the true owner for the payment of freight; on the principle that no man's property can be taken from him without his consent. *Robinson* v. *Baker*, 5 Cush. 137. But when the freight is earned in good faith, under a contract of transportation made with an agent of the owner, who, according to the usages of the business, is clothed with apparent authority by his principal, then the charges for freight will constitute a valid lien upon the property, although the agent by an accidental or intentional departure from his instructions sends the goods by a route not intended, or to the wrong place. A factor to purchase has apparent authority to direct where the goods bought shall be sent; and if successive carriers transport goods according to the directions of the forwarding agent, they act under the authority of the owner and cannot be considered wrongdoers.

The last carrier in the line will have a claim upon them, not only for his own earnings, but for all charges previously accumulated in their carriage, and which he has paid in good faith.    But further, the carrier who rightfully receives goods for transportation to a point beyond his own line has the authority of a forwarding agent to deliver to the next carrier, so that whether the diversion of this property at Chicago was due to the neglect of the Chicago and Northwestern Railroad Company, to whom it was first delivered to be forwarded to Westborough, or to the interference of one of the firm of Rice Brothers at that point, or to both those causes, it was in any aspect the act of an agent or agents of the plaintiff, which the parties engaged in the transportation might treat as binding upon him.    It is not true therefore that the freight charges which were paid by the defendants were not a valid claim against the plaintiff and lien upon his property; and the rule above stated must apply.    *Briggs* v. *Boston & Lowell Railroad Co.* 6 Allen, 246.    *Stevens* v. *Boston & Worcester Railroad Co.* 8 Gray, 262, 266.    *Adams* v. *O'Connor*, 100 Mass. 515. *Burroughs* v. *Norwich & Worcester Railroad Co.* Ib. 26.

The case must go, according to the terms of the report, to an assessor to ascertain the damages which the plaintiff is entitled to recover by the rule here given.                    *Ordered accordingly.*