### WILLIAM LONGSTREET v. GEORGE PHILE.

1. A bailee, converting goods on which he has bestowed labor and acquired a lien, may, in an action of trover brought by the owner, set up his lien-claim in reduction of damages.
2. In a suit brought by the lienor for his work and labor, against the owner, the fact that the owner had recovered judgment for the conversion, raises no presumption that the lienor's claim was adjudicated and allowed in estimating damages. It must be further shown, that the claim was, by assent of him entitled to make it, presented for litigation, and considered in the cause.
3. A non-suit in the Common Pleas on appeal, unreversed, is not an obstacle to a new suit between the same parties on the same cause of action.

---

On *certiorari* to Monmouth Pleas.

The facts are contained in the following state of the case certified :

This cause was tried before the Monmouth Pleas, without a jury, at the October Term, 1874.

The following facts appeared :

In November, 1871, Longstreet, the appellant in this appeal, and defendant below, applied to George Phile, the appellee, to repair a farm wagon badly in need of repairs, and of little value in its then state, for him to repair it as well as he could. The wagon was repaired by Phile in about six weeks after receiving it. His bill for work and material was $51.40, and Longstreet was notified that it was done, and requested several times to take the wagon and pay the bill for repairs, but he did not do so. Phile told Longstreet that if he did not take the wagon and pay his said bill, he, Phile, would sell it for the purpose of getting his bill for repairs. The wagon was repaired in a workmanlike manner, some of the items being disputed as being too high. In January, 1873, the wagon having remained in Phile's possession up till that time, was sold by Phile's order at private sale, for $52.50. The money was received and retained by Phile for his bill, no part being paid to Longstreet. In May, 1873, Longstreet sued Phile before Justice Wainright, of Monmouth county, in an action of trover, for taking and converting the wagon to his own use, and on May 24th, 1873, recovered judgment against Phile for $57.50 damages. Phile paid the judgment and Longstreet received the money. Phile then sued Longstreet before the same justice, and on the 14th of June following, recovered a judgment against Longstreet for the $51.40, the amount of his bill. Longstreet appealed from this judgment, and on the trial of that appeal before the Monmouth Pleas, at October Term, 1873, Phile was non-suited.

In January, 1874, Phile again sued Longstreet for his said bill of repairs, before Justice Forman, of said county, and January 31st, 1874, recovered judgment, with interest on his bill, for $53.49. From this last judgment Longstreet appealed to the Monmouth Pleas, which appeal was tried at the October Term, 1874. Some of the witnesses of Longstreet testified that at the time of the sale of the wagon by Phile's order,

it was worth from $75 to $100; and on the cross-examination of some of the witnesses of Longstreet, that it was not worth any more than the price for which it was sold. After the close of the evidence the counsel for Longstreet moved to non-suit, because—

1. Phile had taken the wagon for his pay, and by the verdict in the trover suit, the ownership in the same was changed to him.

2. Because he could not maintain an action for repairs to his own wagon. This motion to non-suit was refused.

After the case was argued by the counsel of the respective parties, the counsel of Longstreet asked the court to nonsuit Phile, because the judgment of non-suit in this case for the recovery of the same demand, rendered by the Court of Common Pleas at October Term, 1873, was still in full force and effect, no steps having been taken to reverse the same. This motion was also refused.

The court reversed the judgment of the justice, and gave judgment for Phile, the appellee, for $48.45.

The reason of the court for giving the judgment was, that Longstreet had recovered, in the trover suit, the value of the wagon in its improved state, and Phile was entitled to recover the value of the repairs put upon the wagon by himself.

Argued at June Term, 1876, before Justices DEPUE, VAN SYCKEL and KNAPP.

For the plaintiff in *certiorari*, *George C. Beekman.*

For the defendant, *John J. Ely.*

The opinion of the court was delivered by

KNAPP, J. The *certiorari* in this case brings here for review the judgment of the Common Pleas of Monmouth county, in a cause between these parties, on appeal from the judgment of a court for the trial of small causes. The facts appear in the state of the case sent under the certificate of the

judges of the Common Pleas. The judgment on appeal was rendered in favor of the plaintiff below, for $48.45.

The first reason assigned for the reversal of the judgment is, that the plaintiff in *certiorari* owed the defendant nothing, but the Common Pleas have found the fact conclusively for this inquiry, to be the other way.

The second reason is, that the claim sued for was for repairs done to the plaintiff's wagon by defendant, and that defendant retained it for his debt. In the absence of agreement, the defendant could not retain the wagon for his debt, but having, by law, a lien for the improvements put upon it by his labor, skill and material, he might, in the assertion of such lien, retain the possession until paid, and the case shows such to have been the character of the defendant's possession while it continued. This could not preclude him from recovering, by suit, for the services performed for the plaintiff upon his property, and nothing short of payment of the judgment would prevent him continuing the lien or selling the property on execution.

The fourth and fifth reasons are embraced in the second.

The sixth and seventh reasons aimed at the right of recovery are, that Phile having a lien upon the wagon of the plaintiff for work done and material furnished by him as a mechanic, in the repair of the wagon, Phile retained its possession for a time, under his lien, then sold it for more than the amount of his claim, and retained the proceeds in satisfaction of his debt. And it is claimed that a recovery in this suit would give double payment. If the sale was made with plaintiff's assent, or subsequently acquiesced in by him, the proceeds of the sale in his hands for the plaintiff's use, would pay or set off the defendant's debt. But the sale by Phile as a lienor, unless by the assent of the plaintiff, as owner, was an act of conversion, for which trover would lie. Plaintiff might, by a subsequent acquiescence in the sale, waive the tort, and choose to treat the proceeds in defendant's hands as money had and received by him to plaintiff's use; then a demand made by defendant of payment for his labor could

successfully be met by an opposing claim for the money had and received to his use. But the plaintiff did not assume this posture; he saw fit, as the case shows, to proceed against the defendant for the conversion, and, in an action of trover, recovered judgment against the defendant for damages for the conversion, which the defendant paid to the plaintiff.

The plaintiff still further contends that the defendant is paid his bill through recoupment or reduction of damages in the action of trover, the contention being that the recovery for the conversion entitled him, as his proper measure of damages, not to the value of the wagon in its improved state, but to that value reduced by the amount of the defendant's claim for which he had a lien, and that it must therefore be conclusively presumed against the defendant, that in the trover suit, the amount of his bill, claimed as a lien, was, in ascertaining damages, awarded to him out of the value of the wagon as increased by his labor.

In trover, the usual measure of damages is the value of the goods at the time of the conversion, and interest thereon, such allowance most commonly affording exact compensation to the plaintiff. Such is the general rule, but to it there are exceptions.

A return of the goods to the owner, after the conversion, has, from early times, mitigated the damages, and ordinarily, to a nominal sum. *Rolle's Abr., Action on the Case,* (L); *Sedg. on Dam.,* (6th ed.) p. 614, *and notes.* Where the plaintiff's right to the possession of goods was defeasible, upon his default in making payment to a mortgagee of the goods, the amount of a loan, and the mortgagee, before the money became due, wrongfully took the possession and disposed of the goods, the measure of damages was held to be the value of the goods, less the debt secured, upon the ground that such damages represented the value of the plaintiff's interest in the property. *Brierly* v. *Kendall,* 17 *Ad. & E.* (*N. S.*) 937.

In an action by a mortgagee against a mortgagor, of chattels for a conversion after default in payment of the money

secured, the recovery was limited to the debt and interest. *Parish* v. *Wheeler*, 22 *N. Y.* 494.

Where a pledgee of goods sells the pledge before the money which it is given to secure payment of has become due, the defendant has been allowed, in the assessment of damages, to deduct from the value of the goods the amount of the debt secured. *Johnson* v. *Stear*, 15 *C. B.*, (*N. S.*) 330; *Jarvis* v. *Rogers*, 15 *Mass.* 389; *Sedg. on Dam.*, (*6th ed.*) *p.* 601, *n.* 2.

The learned Chief Justice, in delivering the judgment of the majority of the court in Johnson *v.* Stear, justified the deduction of the loan from the value, on the ground that the deposit of the goods to secure payment of the loan on a given day, with power to sell in case of default in payment, created an interest and right of property in the goods which was more than a mere lien, and that the wrongful act of the pawnee did not annihilate the contract between the parties, nor the interest of the pawnee in the goods under the contract.

A substantial difference exists between the character and extent of the property which the bailee has in a pawn, and goods held under bailment for him. In the former, he has a qualified property, which attaches to the pledge, and may exist after he has parted with the possession; he may pledge the property for his own debt without such forfeiture of his rights, that the bailor can, without payment of the loan secured, get their possession, (*Donald* v. *Suckling*, *L. R.*, 1 *Q. B.* 585,) and on default of the bailor, may sell the pledge and defeat the right to redeem.

In the other case, the bailee has only a naked lien as against the owner; he may hold possession of the goods until his debt is paid. His holding is to induce rather than to satisfy or compel payment of his debt; voluntarily to part with possession is to surrender his right; a sale of the property by him is a conversion, and the owner may resume the possession wherever he finds it.

It is a noticeable extension of this exception to the general rule of damages, to permit a bailee for hire, in a suit for the conversion of the goods by a sale, which, in itself, is a *final*

*extinguishment* of his lien, to reserve. or recoup his debt out of the damages; yet many cases show that in the increasing desire of the courts to adjust and settle all questions between the parties touching the same cause, and to avoid circuity and multiplicity of actions, the rule has been so extended.

When the bailee has continued his possession, and the conversion was not a tortious act, but evidenced by a demand and refusal after tender of the debt, the right to retain his debt has been usually allowed on the authority of *Green* v. *Farmer*, 4 *Burr.* 2223 ; *Fowler* v. *Gilman*, 13 *Metc.* 267. The same exception to the general rule has, in many cases, been extended to actual conversions.

Where cloths of the plaintiffs had been delivered to a printing works to be printed, and had, after they were bleached and printed, without plaintiffs' authority, been consigned by the printers to the defendants, who had made advances on the cloths in trover, the plaintiffs were allowed to recover only the value of the cloth in its brown state. *Dusser Manf. Co.* v. *Waterston*, 3 *Metc.* 9. To the same effect are *Briggs* v. *Boston and Lowell R. R. Co.*, 6 *Allen* 246 ; *Chamberlin* v. *Shaw*, 18 *Pick.* 278 ; *Adams* v. *O'Connor*, 100 *Mass.* 515 ; *Whitney* v. *Beckford*, 105 *Mass.* 267 ; *Chinery* v. *Viall*, 5 *H. & N.* 288 ; *Hyde* v. *Cookson et al.*, 21 *Barb.* 92.

The principle of limiting the recovery to such sum as will compensate the plaintiff for the injury actually sustained, was illustrated and applied by Chief Justice Green, in *Hopple* v. *Higbee*, 3 *Zab.* 342. I think it must be conceded that the right to deduct from the value of the goods the amount of the defendant's lien thereon, arising under a bailment for hire, forms one of the exceptions to the common rule of damages in trover. The reasons that may be urged against it seem, when examined, to be more technical than substantial.

Undoubtedly, the general rule is as above stated, but it is so because, generally, the value of the goods is the fair measure of the injury which the plaintiff has sustained, and, as was said in the case of *Baldwin* v. *Porter*, 12 *Conn.* 473, both the rule and its exceptions proceed upon the principle

that the plaintiff ought to recover as much, and no more, damages than he has actually sustained. But, admitting that the defendant, in the action of trover, was permitted, by legal rules, to claim a deduction of the amount for which he had a lien upon the wagon, is there any legal conclusion to be drawn from the fact of a recovery in that suit, that such allowance was made? The cases speak of it as a *right* of the defendant to have his claim allowed him in estimating the plaintiff's injury.

The case does not show, as a fact, that the defendant's bill for services was allowed, or presented for allowance, in that litigation. The plaintiff's position, therefore, grounds whatever of force it has, upon the assumption that, under the law, the defendant was obliged, in order to save his claim, to set it up in that suit, and therefore, presumably, did so. If no such presumption lies in the way of plaintiff below, then, confessedly, there is no evidence that he has ever been paid, and the Common Pleas were right in their judgment.

I think that a recovery for the conversion of goods on which defendant had a lien at the time of the conversion, raises no legal presumption against the defendant: the claim for which his lien existed, was considered and allowed in estimating damages. To bar a subsequent suit for his debt, it must at least appear that the defendant put himself upon that in making defence. While the defendant has, as his right, an answer to so much of the usual claim for damages as his lien amounts to, the exercise of that right is optional with, not imperative upon him.

The title to the property, after repairs done, remains in the original owner. If the property, in its improved state, were converted by a stranger, its value at the time of conversion would be the proper damage. If converted by the lienor, the damages against him would be the same, unless he claimed his right of reduction. If trover or replevin were brought by the owner against the lienor's vendee, the value, or the goods, would be recoverable. It may be greatly against the interest of the defendant to present his claim in

such action, and against his rights to compel him to do so. Cases may readily be supposed, where the value of work and material put upon plaintiff's property would greatly exceed the value of the property in its altered condition. The article, with all the labor put upon it, might entirely fail to meet the purposes which the owner designed it for, and be valueless for any other; if, being left upon the hands of the artisan, he should destroy, by carelessness or design, to rid himself of it, it would not be just to compel the defendant, in a suit for its conversion, to set up his claim, to be balanced and liquidated by the inferior value of the converted goods. He may prefer to pay damages and bring suit for his debt, and he has, in his election, the right to do so.

All the judges in *Edmondson* v. *Nuttall,* 17 C. B. (N. S.) 280, say that, *prima facie,* the measure of damages for the conversion of goods, is their value at the time of conversion. If a recovery in such action raises any presumption as to the elements which enter into the estimation of damages, it is not as the plaintiff contends for. To overcome the right of the plaintiff below to recover, in this suit, the amount of his debt, it must, at least, have been shown by the record, or other competent evidence, that in the suit in trover, the debt for which the defendant had a lien on the goods, was presented for litigation, and insisted on by him in reduction of damages. The case presents no such facts.

The eighth and ninth reasons present, further, as ground for reversing this judgment, that in a former suit between the same parties for the same debt, on appeal to the Common Pleas of Monmouth from the judgment of the justice, the plaintiff, on trial of the appeal, had judgment of non-suit against him, which judgment, it is claimed, is, until reversed, a *final determination* of the matter between the parties, and a bar to this suit. The case of *Schuyler* v. *Mills,* 4 *Dutcher* 137, is relied on to support this view. It is only necessary to say that the language of Justice Clawson is not rightly interpreted by the plaintiff. The judgment of non-suit was,

until reversed, a *final determination* of *that* suit, but is no obstacle to a new suit for the same cause of action.

There appearing no error in the judgment of the Common Pleas, it is affirmed, with costs.