THE UNITED STATES *v.* PINOVER.

*(District Court, S. D. New York.* June 24, 1880.)

1. NOTICE—PAPER CONTAINING NOTICE.—A person chargeable with the duty of giving a notice does not perform that duty by handing the party entitled to notice a paper containing such notice, especially if the person to whom it is handed is directed to use it in a particular way and for a particular purpose, which does not require him to examine or read it.

2. AGENCY—PAYMENT—MISTAKE.—It is a general rule that an agent, known and treated with as such, cannot be compelled to pay back money received by him under a mutual mistake of fact, and paid over to his principal.

    *Bank of Commerce* v. *Union Bank,* 3 N. Y. 230, and *The Kingston Bank* v. *Ettinge,* 40 N. Y. 391, considered.

3. SAME—SAME—SAME—ASSISTANT TREASURER OF THE UNITED STATES.—In such case an agent is liable for money received from an assistant treasurer of the United States upon the redemption of a stolen bond, containing a forged indorsement, although the money has been paid over to the principal, upon the ground that such treasurer had no power to bind the United States by payment of the money, or to consent that such agent should pay the same over to his principal.

    *Cooke* v. *United States,* 91 U. S. 389, followed.

4. PRACTICE—GENERAL AND SPECIAL VERDICTS.—Where a special verdict is inconsistent with a general verdict the former controls the latter, and the court must render judgment accordingly.

    N. Y. Code of Civ. Proc. § 1188.

*S. L. Woodford,* District Attorney, and *P. L. Butler,* Assistant District Attorney, for plaintiff.

*M. M. Budlong,* for defendant.

CHOATE, D. J. This was an action brought by the plaintiff to recover of the defendant the amount of a $500 government bond, paid by the assistant treasurer, at New York, to the defendant, on the presentation of the same at his office in New York. The bond was payable to the order of Robert Mickle. It had indorsed upon it an assignment purporting to be signed by Robert Mickle, transferring it to Levi H. Borne. It was overdue when presented for redemption. The defendant presented with it a power of attorney, duly acknowledged, from Levi H. Borne, who lived in Indiana, authorizing him, as attorney of said Borne, to sell and assign or collect the said

bond. When the defendant presented the bond, and this power of attorney, the assistant treasurer received the same, and gave to defendant the following receipt:

"Received from Alexander Pinover, attorney, $500, in U. S. 5-20 bonds; payment made subject to examination and acceptance of bonds by the department at Washington.

"C. N. PATTERSON,<br>
"Department Assistant Treasurer."

The defendant at the same time executed upon the back of the bond the following instrument:

"For value received I assign unto the secretary of the treasury for redemption.

"ALEXANDER PINOVER, Attorney.

"November 4, 1878."

The defendant was told to take the receipt to the cashier in another part of the building and get his money. He did so, and upon presentation of the receipt to the cashier he was paid the amount due on the bond, and gave a receipt for it as follows:

"NEW YORK, November 4, 1878.

"The treasury of the United States redeemed to Alexander Pinover United States 5-20 bonds, account, etc.,    $500.00
Interest,                                                     7.64
                                                          _____
                                                           $507.64

"Received payment.

"ALEXANDER PINOVER."

Upon examination at Washington it was discovered that this bond was one which had been reported lost or stolen, and for which a duplicate had been issued to Robert Mickle, upon his giving a bond of indemnity. Thereupon the plaintiff made demand upon the defendant for repayment of the money, and, that being refused, brought this suit to recover the same as money paid under a mistake of fact, alleging that what purported to be the signature of Robert Mickle to the assignment was a forgery.

The answer of the defendant denied the forgery, and set up as a separate defence that he acted in good faith and only as

the agent of Borne in the transaction; that he was known to the plaintiff to be acting as such agent, and that immediately after receiving the money he paid it over to his principal. In respect to the receipt given by the assistant treasurer to the defendant, to be handed to the cashier, the defendant testified that he did not read it or know its contents; that he simply took it to the cashier and handed it to him as directed. There was no evidence, except the fact that the paper was handed to him and held by him in passing from the office of the assistant treasurer to that of the cashier, that he received any information of its contents, or was in fact informed that the assistant treasurer received the bond subject to examination and approval at Washington. Upon the question of the alleged forgery of the name of Robert Mickle, the jury found specially that it was a forgery, and it is not claimed that there was any error committed in the trial of that issue.

The jury were instructed that the taking and holding of the receipt, till it was surrendered to the cashier, was some evidence of notice to the defendant of its contents; that if in fact the defendant was informed that the bond was received subject to examination and acceptance at Washington, and if the signature to the assignment was a forgery, the plaintiff was entitled to recover; that if the defendant used the receipt without any knowledge in fact of its contents, but merely as a token to be handed to the cashier as he was directed, then he was not chargeable with knowledge of its contents; and there being no dispute that the defendant acted in good faith, and was known to be and treated as an agent in the transaction, and had paid over the money to his principal, he was not liable to repay it.

Under these instructions the jury, besides finding the special verdict of forgery, found a verdict generally for the defendant. The plaintiff now moves for judgment on the ground that the finding of the fact of forgery entitles the plaintiff to a judgment, or in the alternative for a new trial for error of law and misdirection of the jury.

It is claimed that there was error in leaving it to the jury to determine, as a question of fact, whether the giving of the

receipt was a communication of the fact stated therein, that the bond was received subject to examination and acceptance at Washington. But if the point assumed in this ruling was correct, that it was incumbent on the assistant treasurer to communicate this fact, then I think it is clear that there was no error to the prejudice of the plaintiff in the manner in which this question was submitted. A person chargeable with the duty of giving a notice does not perform that duty by handing the party entitled to notice a paper containing such notice, especially if the person to whom it is handed is directed to use it in a particular way and for a particular purpose, which does not require him to examine or read it. If he does read it, it is of course notice to him of the contents. But if his attention is not called to its contents—if he is not told to read it, but is told simply to take it somewhere else' and present it and get his money, and he does so without reading or learning its contents—it would be most unreasonable to hold that the duty of communicating the fact written upon it has been discharged. No authority for such a proposition has been cited.

It is also claimed by the plaintiff that money paid under a mistake of fact to one who is known to be and treated as an agent can be recovered back from the agent, even after he has paid it over to his principal, in case the principal had no right to give the agent authority to act. The argument is that one who has no right to receive money can give no authority to another to act as his agent in receiving it, and so that the power of attorney in such a case is a nullity, and no act done under it can avail the assumed agent as a defence. I think this reasoning is unsound, and not in accordance with the authorities. If A. holds B.'s note, and sends his servant to B. with the note demanding payment for A., and B., knowing that the person presenting the note is presenting it as servant or agent of A., and not for himself, thereupon takes the note and gives the money to the servant, he gives it to him for the purpose of having him pay over the money to A. Though nothing is said, the payment is with an implied direction to deliver the money to A. as surely as if B. should say: "Here,

take this to your master." If, now, the next day it is discovered that the note had been already paid, and therefore that A. had no right to receive the money, nor any right to authorize his servant to receive it on his behalf, yet B. would have no claim on the servant, who has done only what he consented to his doing in paying the money to his master. He must look to A., with whom, in fact and in contemplation of law, the transaction was had. The weight of the authorities is clearly in favor of this view of the law. *Holland* v. *Russell*, 30 L. J. (Q. B.) 312; 32 L. J. (Q. B.) 297; *Shand* v. *Grant*, 15 C. B. (N. S.) 322–324; *Newall* v. *Tomlinson*, L. R. 6 C. P. 405; *Buller* v. *Harrison*, Cowp. 565–569; *Frye* v. *Lockwood*, 4 Cow. 454–456; *Granger* v. *Hathaway*, 17 Mich. 500; *Morral* v. *McClellan*, 1 Wend. 173; *Costigan* v. *Newland*, 12. Barb. 456.

If the agent acts in bad faith, or with knowledge of his principal's want of right to receive the money, or is himself a party to an illegal exaction of the money, or is not authorized by his assumed principal to act for him as where his power of attorney is a forgery, payment of the money over will be no defence. *Miller* v. *Aris*, 3 Esp. 231; *Snowdon* v. *Davis*, 1 Taunt. 359; *Edwards* v. *Hodding*, 5 Taunt. 416, [\*815;] *Seidil* v. *Peckworth*, 10 S. & R. 442. See, also Story's Agency, (8th Ed.) §§ 300, 301, and notes.

If the party receiving the money, though an agent in fact, does not disclose his agency to the party making the payment, there is of course no presumed consent or direction that he pay over, and payment to his principal will be no defence. In such a case, having acted as a principal, he will not be permitted to defend on the ground that he was not the principal. *Canal Bank* v. *Bank of Albany*, 1 Hill, 287, 293, 294.

This last case was followed in the case of *Bank of Commerce* v. *Union Bank*, 3 N. Y. 230–237. This case, however, puts the liability on the equitable ground that "money paid by one party to another through mutual mistake of facts, in respect to which both were equally bound to inquire, may be recovered back." It was a case of money paid upon a forged indorsement to a collecting bank, which did not, so far as

appears in the case, disclose its character of agent. The court added : "The defendants here, as in that case—*i. e., Canal Bank* v. *Bank of Albany,*—have obtained the money of the plaintiff without right, and on the exhibition of a forged title as genuine, the forgery being unknown to both parties. The defendants ought not, in conscience, to retain the money, because it does not belong to them, and for the further reason that the defendants and the previous indorsers have each, on the same principle, their remedy over against the party to whom they respectively paid the money, until the wrong-doer is finally made to pay. If that party should be irresponsible, or if he cannot be found, the loss ought to fall on the party who without due caution took the bill from him."

The principle thus stated is, perhaps, broad enough to charge with liability even an agent who has disclosed his agency; but the question was not directly raised, and can hardly be thought to have been within the consideration of the court, especially as the opinion in the case referred to as settling the principle expressly distinguished the case of an agent who disclosed his agency from the case then before the court.

The case of *The Kingston Bank* v. *Ettinge,* 40 N. Y. 391–400, cites these cases in support of the general proposition that the fact that the party receiving the money was an agent, who had paid over to his principal, would be no defence. It does not advert to the distinction between an agent whose agency is disclosed to the party paying, and one who acts as himself a principal. Nor was the case before the court one of agency.

In the same case the court cites and relies on *Rheel* v. *Hicks,* 25 N. Y. 289, where it was held that money paid to a public officer in compromise of a claim against the plaintiff, as the putative father of an alleged unborn bastard child, could be recovered back upon proof that the woman was not in fact pregnant, although the defendant had paid it over to the county. That seems to have been the case of money *illegally exacted* by a public officer, and therefore within some of the cases first above cited; not a case in which the party re-

cciving is entitled to make this defence. Whether, however, these authorities have impaired to any extent, or in reference to a particular state of facts, the general rule that an agent, known and treated with as such, cannot be compelled to pay back money received by him under a mutual mistake of fact and paid over to his principal, and if so whether the present case comes within them, it is unnecessary to determine, in view of the conclusion which I have reached in respect to the powers of the assistant treasurer, and the liability of the defendant by reason of his having received this money from that officer.

In the case of *Cooke* v. *U. S.* 91 U. S. 389, the question of the power of the assistant treasurer to bind the United States, in the matter of adjusting and paying claims against the government, was considered, and it was held that the secretary of the treasury alone has power to represent and bind the government in his department in this respect; that the powers of the assistant treasurers are limited and fixed by public laws, of which all persons must take notice. This case was not cited upon the trial of the present action. It was assumed, upon the trial, that the assistant treasurer at New York had authority to represent the government in the redemption of this bond. It was upon this assumption that the ruling was made that it was incumbent on the plaintiff to show that the assistant treasurer gave notice to the defendant that he received the bond subject to examination and acceptance at Washington, in order that the plaintiff might have the benefit of that notice.

But it was held, in the case of *Cooke* v. *U. S.*, that all the acts of the assistant treasurer in paying the debts of the United States are so subject to the approval of the secretary as matter of law. The question of actual notice was therefore wholly immaterial. Upon the same assumption it was ruled that if, without such notice, the defendant had paid over the money to his principal, it would shield him from liability; the theory of the charge being that in respect to this transaction the assistant treasurer was, in legal effect, the United States, and could bind the government by recognizing and treating with the defendant as the agent of another; and that, if he

did so, the plaintiff, through him, consented to receive the money from the defendant as an agent, and consented to his paying it over to his principal, and therefore must look to the principal and not to the agent for repayment. In view of this decision of the supreme court of the United States both of these rulings were erroneous. The assistant treasurer had no power to bind the United States by paying the money to the defendant, nor to consent that the defendant pay it over to any other person. If the secretary did not approve his act it could never have any validity whatever, and does not stand in the way of the plaintiff's recovering the money.

For these errors the plaintiff is entitled to have the general verdict in favor of the defendant set aside; and upon the special verdict, that the name of the former owner of the bond was a forgery, the plaintiff is entitled to have judgment. The finding of this fact left no issue to be tried under the pleadings. The receipt of the money is admitted in the answer. The special matter set up in the answer—the payment of the money immediately after its receipt to Borne, for whom defendant acted as attorney—constitutes no defence, because the plaintiff, upon the facts stated in the answer, never, by any public officer authorized to do so, paid the money to him as an agent. On the contrary, the officer alleged to have paid it, the assistant treasurer, had no authority on behalf of the government to consent that the defendant pay it to his principal.

"Where a special verdict is inconsistent with a general verdict the former controls the latter and the court must render judgment accordingly." N. Y. Code of Civil Procedure, § 1188; *Fraschieris* v. *Henriques*, 6 Abb. Pr. (N. S.) 251, 263.

There was no evidence of any regulation by the secretary of the treasury conferring upon the assistant treasurer the power to redeem this bond, or to receive it for redemption, otherwise than subject to examination and acceptance at Washington; nor is any such regulation averred in the answer. No point is made in the answer, nor was there any evidence, that there was any such delay in the examination of the bond at Washington that the defendant thereby lost

any rights of recovery over against any other party. Nor do I perceive how such a point could be made by an agent who pays over immediately, as in the answer it is admitted that the defendant did, without waiting for the result of the examination.

The point made, that knowledge on the part of the defendant that the bond was received subject to examination and acceptance at Washington is not equivalent to notice not to pay over, and does not affect the defendant, is untenable, because, as held above, the assistant treasurer had no authority, even thus provisionally, to recognize and treat with the defendant as an agent of another, except subject to the examination and approval of the secretary; and the secretary, having disapproved and disaffirmed his action in the premises, the defendant can have no benefit therefrom.

Verdict in favor of the defendant set aside, and judgment for the plaintiff in the special verdict.