### PATTEN and others *v.* UNION PAC. RY. CO.

*(Circuit Court, D. Colorado. December 11, 1886.)*

1. CARRIERS—OF GOODS—LIEN FOR FREIGHT — RAILROAD COMPANIES—TRANSPORTATION BEYOND LINES — SPECIAL INSTRUCTIONS TO FIRST CARRIER AS TO FORWARDING.

    A carrier receiving goods for transmission over his own line, and consigned to a place beyond, has the apparent authority to forward the same to the place of destination by any of the ordinary routes thereto, and a second carrier, receiving the goods in the usual and ordinary course of business, without notice of any special instructions to the first carrier, and transporting them to the place of destination, is entitled to demand the ordinary and usual freight therefor.

2. SAME—NOTICE OF SPECIAL INSTRUCTIONS.

    The fact that, when the second carrier received the goods from the first, they were loaded in an appropriately marked car of the particular railroad over which the first carrier was instructed to forward them, does not amount to implied notice to the second carrier of such instructions.

At Law. Replevin.
*R. D. Thompson,* for plaintiffs.
*Teller & Orahood,* for defendants.

BREWER, J. The facts in this case are these: Plaintiffs shipped from Kirksville, Ohio, to Denver, Colorado, a car-load of lumber. They delivered it to the Baltimore & Ohio Railroad Company, at Kirksville, for transportation by it to Chicago, with instructions to forward it by the Chicago & Alton and the Atchison, Topeka & Santa Fe lines. They had made contract arrangements with the latter company for special rates. Disregarding the instructions, the Baltimore & Ohio Company delivered the car at Chicago, in the usual course of business, to the Chicago, Rock Island & Pacific Company, which, in its turn, delivered it to the defendant, by whom it was finally brought to Denver. Defendant, having paid all prior charges for freight of the Baltimore & Ohio and the Chicago, Rock Island & Pacific Companies, claimed a lien for these charges, as well as for its own. Plaintiffs declined to pay these charges, and brought this action of replevin. The contention of the plaintiffs is that the Baltimore & Ohio Company was a special agent, with limited powers, and that it disregarded its instructions, and exceeded its authority; that the carriage by the defendant company, as well as the prior carrier, the Chicago, Rock Island & Pacific, was without authority from and against the will of the owners, and, being thus unauthorized, created no charge against the owners for compensation,—no right to a lien.

The principal case cited by the plaintiffs in support of this view is that of *Fitch* v. *Newberry,* 1 Doug. (Mich.) 1, which unquestionably sustains their position. In a very elaborate and exhaustive opinion that court holds that the forwarding company is only a special agent, with limited powers; that whoever deals with such agent is bound to take notice of the extent of his authority; and that if such agent, disregarding his instructions, delivers the goods to the wrong carrier, the latter, although he carries them to the place of destination, does so at his own risk, is not the debtor of the owner, and has no claim for freight or lien upon the goods. I cannot think, under the present conditions of transportation business, the rule therein announced is the correct one. The true rule is this: that a carrier, receiving goods for transmission over his own line, and consigned to a place beyond, has the apparent authority to forward the same to the place of destination by any of the ordinary routes thereto, and that such second carrier, receiving the goods in the usual and ordinary course of business, without notice of any special instructions to the first carrier, and transporting the goods to the place of destination, is entitled to demand the ordinary and reasonable freight therefor. The question evidently turns upon the authority of the first carrier, and whether the delivery to the second carrier is in pursuance of the apparent authority conferred upon the first. I am aware of the distinction that

has frequently been drawn between the case of a general and that of a special agent; that the former is presumed to have all the ordinary powers necessary for the accomplishment of the business intrusted to him, while the latter is one with limited and special powers; and the further rule that one dealing with a special agent is bound to take notice of the exact powers conferred. But this general rule has been of late years subject to considerable modification.

The rule as recognized to-day is well stated in 1 Pars. Cont. 44, as follows:

"It may, indeed, be said that every agency is, under one aspect, special, and under another, general. No agent has authority to be, in all respects, and for all purposes, an *alter ego* of his principal, binding him by whatever the agent may do in reference to any subject whatever; and therefore the agency must be special, so far as it is limited by place or time, or the extent or character of the work to be done. On the other hand, every agency must be so far general that it must cover, not merely the precise thing to be done, but whatever usually and rationally belongs to the doing of it. Of late years, courts seem more disposed to regard this distinction, and the rules founded upon it, as altogether subordinate to that principle which may be called the foundation of the law of agency; namely, that a principal is responsible, either when he has given to an agent sufficient authority, or when he justifies a party dealing with his agent in believing that he has given to this agent this authority."

It is sometimes expressed in another way; and that is that the principal is bound by the acts of his agent, done within the apparent scope of the authority conferred; and that, whether he be technically either a general or special agent. I think that rule determines this case, and that a common carrier, having goods in its possession consigned to a point beyond its own line, is clothed with the apparent authority to forward those goods by any of the ordinary and usual routes. In *Whitney* v. *Beckford*, 105 Mass. 271, the court uses this language:

"But when the freight is earned in good faith, under a contract of transportation made with an agent of the owner, who, according to the usages of the business, is clothed with apparent authority by its principal, then the charges for freight will constitute a valid lien upon the property, although the agent, by an accidental or intentional departure from his instructions, sends the goods by a route not intended, or to the wrong place."

Any other rule would work a serious hinderance to the immense transportation business of to-day, while this rule protects both carrier and owner. If the first carrier disobeys his instructions, by which loss results to the owner, such carrier is liable to an action of damages, and, as is proper, the wrong-doer suffers the loss. At the same time, the second and innocent carrier, having done the work of transportation, receives, as it ought, the just freight therefor. The first carrier is the agent of the owner. If he has done wrong, why should not the principal be remitted to his action against his wrong-doing agent, and why should the burden of litigation be cast upon the innocent second carrier? Plaintiffs say that, in this case, they

would have to go to Ohio to maintain their action; but, if they select an agent in Ohio, and that agent does wrong, why should not they go to Ohio to punish him for his wrong. And why should the defendant, innocent of any wrong, be forced to go thither to litigate with their agent? And why should the owner, who has had his goods carried to the place of destination, be permitted to take them from the carrier without any payment for such transportation? Is the route by which the freight is transported a matter so vital to him that, carried over the wrong route, he is entitled equitably to the possession of his goods free from any burden of freight?

One other matter requires notice. That the Chicago, Rock Island & Pacific Company received this car at Chicago, in good faith, in the usual course of business, and without actual notice of the special instructions to the Baltimore & Ohio Company, is shown by the testimony beyond dispute. The lumber was in fact loaded in a car belonging to the Chicago & Alton Railroad, and so marked. It is insisted by the plaintiffs that the use of such a car was implied notice to the Chicago, Rock Island & Pacific Company that the car was to be shipped over the Chicago & Alton road. I do not think this is true. Courts must be presumed to be familiar with the ordinary facts of transportation; and one of those facts is that the freight cars of each road are constantly used by other roads. Everywhere one goes he sees cars belonging to multitudes of railroad corporations in use upon roads other than their own. The frequency of this is such that it seems to me no implication can fairly be drawn from the fact that the goods are loaded in a car belonging to one road that special instructions have been given to ship over that road.

These being the only questions in the case, judgment must be entered in favor of the defendant, for a return of the property, or, upon failure to do that, for the amount of the freight charges, both its own and those of the prior carriers.