## DENVER & R. G. R'Y CO. V. HILL.

1. COMMON CARRIERS — CONNECTING LINES — LIEN ON GOODS FOR TRANSPORTATION.— The general rule is that a carrier receiving goods for transportation over its line to a point beyond is authorized to select any of the ordinary routes leading thereto, and that the second carrier, receiving them in good faith, and in the ordinary and usual course of business between connecting lines, without notice of any special directions on part of the consignor, will have a lien for his reasonable charges, and also for charges advanced the first carrier.

2. SAME — CONSPIRACY TO DISREGARD SHIPPING INSTRUCTIONS — WRONGFUL POSSESSION DEFEATS LIEN.— Where goods are delivered to a common carrier for shipment over its line to a certain point thereon nearest the point of their destination, and with instructions to there deliver them to a designated carrier for transportation to the point of destination, but who delivers them to a different and competing line in wilful violation of the shipping directions, and in pursuance of an illegal contract existing between the first-mentioned carrier and the one to whom the goods were delivered by it, whereby all freight so received for transportation over the line designated by this consignor should be delivered to and received by its competitor, the latter is not entitled to a lien on the goods for transportation and back charges, although it may not have had notice in this instance of the shipping directions. Hav-

ing conspired with the first carrier to disregard the owner's in-
structions in all cases of this character, the court was warranted
in finding that it did not obtain possession of the property in good
faith, and in the usual and ordinary course of business between
connecting lines.  ·

## Appeal from El Paso County Court.

THE appellee, as plaintiff, filed his complaint against
the defendant in the court below, alleging ownership and
right of possession to certain grain, which he claimed
was unlawfully taken and ' wrongfully withheld from
him by the defendant after demand.    The value of the
property was stated to be $400.    The defendant denied
all the allegations of the complaint and claimed a car-
rier's lien upon the property for transportation from
Denver to Colorado Springs, and also for freight charges
advanced to the Union Pacific Railway Company.    In
his replication the plaintiff denied the defendant's claim
for a lien upon the property, and alleged that the owner
had directed the goods to be shipped from the city of
Denver to their destination over the Denver & New Or-
leans Railroad, a competing line with that operated by
the defendant, and averred that the defendant, well
knowing such shipping directions, obtained possession
of the goods as the result of a conspiracy between it and
the Union Pacific Company to divert all traffic from
such competing line.

Upon a trial to the court below without the interven-
tion of a jury the issues were found for the plaintiff and
a judgment rendered in his favor.   To reverse this judg-
ment the defendant brings the case here by appeal.

Messrs. WOLCOTT & VAILE, for appellant.

Messrs. WELLS, McNEAL & TAYLOR, for appellee.

MR. JUSTICE HAYT delivered the opinion of the court.

From the evidence introduced at the trial it is shown
that in the year 1883 a car-load of grain was shipped

from St. Edwards, Neb., to the appellee, at Colorado
Springs. The city of Denver being the nearest point to
Colorado Springs upon the line of the Union Pacific road,
the consignor directed the goods to be forwarded from
Denver to their destination by the Denver & New Orleans
road, which directions were plainly marked upon the
receipt given for the goods by the agent of the Union
Pacific Company at St. Edwards, and also upon the way-
bill filled out at the same time. The agent of the Denver
& New Orleans road at Denver, having been informed
of the shipment, notified the agent of the Union Pacific
road at Denver, shortly before the arrival of these goods,
that the former company would insist upon having these
goods turned over to it at Denver for transportation over
its road to appellee at Colorado Springs, and was in-
formed by the former agent that, in obedience to instruc-
tions from his superiors, he must decline to deliver the
goods to the Denver & New Orleans road. The agent of
the latter road renewed the claim for the goods from day
to day, and upon the day of the arrival of the goods in
Denver, and while the same were in the yards of the
Union Pacific road at Denver, made inquiry in reference
to the matter and was informed by the Union Pacific
officials that the goods had not yet arrived and could not
arrive before the following day. The day after, how-
ever, he learned that the goods had arrived the day be-
fore and were then at Colorado Springs, having been
shipped over the Denver & Rio Grande Railroad, a com-
peting line to the one operated by the Denver & New
Orleans Company. It was also shown that it was the
common practice at this time for the Union Pacific Com-
pany to deliver, and the Denver & Rio Grande road to
receive and transport, freight consigned over the Denver
& New Orleans road, and that this was done in pursu-
ance of an agreement between the former companies.
Mr. Thomas Whitall, the local freight agent of the Union
Pacific Railway Company, testified at the trial that Mr.

Taylor, agent of the Denver & New Orleans road, at various times presented to him bills of lading for freight in possession of the Union Pacific Company, but routed over the Denver & New Orleans, and that he believes in every instance such freight was sent by the Denver & Rio Grande road, and that in such cases it was customary to furnish the latter company with bills of lading showing the correct routing directions of the goods. The testimony also shows that this was not only done with the knowledge and consent of the general manager and the general freight agent of the Denver & Rio Grande Company, but that these officers were active and vigilant in requiring goods so routed to be diverted to the Denver & Rio Grande road; and that in the few instances in which, in obedience to the directions of the consignors, the goods were delivered to the Denver & New Orleans road, called for a vigorous protest from them, coupled with an implied threat of retaliation against the Union Pacific Company.

No attempt was made by appellant to disprove the evidence introduced by the appellee in the court below. It is, however, contended upon this appeal that the judgment is contrary to law.

It has been held that a carrier receiving goods to be transported beyond its line, in delivering them to a subsequent carrier acted as a special agent of the consignor, with limited powers; and if it disregarded its instructions and exceeded its authority, the subsequent carrier could not maintain a lien upon the goods for its transportation charges. *Fitch v. Newberry*, 1 Doug. (Mich.) 1. In later decisions in other states the doctrine of the Michigan court, however, has not been followed; the courts now generally holding that a carrier receiving goods to be transported over its own line to a point beyond has the apparent authority to select any of the ordinary routes leading thereto, and that the second carrier receiving the goods in good faith, in the ordinary

and usual course of business between connecting lines, without notice of any special directions on the part of the consignor, will have a lien for his reasonable charges for transporting such goods over its own line, and also for such reasonable charges as it may have advanced to the first carrier. *Price v. Railroad Co.* 12 Colo. 402.

An examination of the opinion of Commissioner STALL-CUP in the case just cited will show that, while the right of the consignors to select the routes over which the goods should be transported is fully recognized, it is held that in case his instructions in reference thereto are not obeyed by the first carrier, the owner's action was not against the innocent second carrier, but against his own wrong-doing agent. In support of this position the following cases were relied upon: *Patten v. Railroad Co.* 29 Fed. Rep. 590; *Schneider v. Evans*; 9 Amer. Law Reg. (N. S.) 536; *Briggs v. Railway Co.* 6 Allen, 246.

In the first two cases cited the ignorance of the second carrier of the terms of the contract is made an express condition of its exemption from liability in case of loss to the owner. And a reading of the opinion in the case of *Briggs v. Railway Company, supra,* will also show that in that case no wrong or negligence was attributable to the defendant company. In the case at bar, however, we have seen that the Union Pacific and the Denver & Rio Grande Companies had entered into an agreement to disregard all directions requiring goods to go over other lines, and that, in pursuance thereof, all routing directions to the contrary were being ignored by both companies; that the general officers of the appellant company were zealously enforcing a compliance on the part of the Union Pacific Company with such agreement; that it was customary for the latter company to deliver goods routed over the Denver & New Orleans road to the Denver & Rio Grande road for transportation; and that goods were so received and forwarded by the latter company, with full knowledge that the same was in viola-

tion of the owner's directions, and that the officers of the road entered a vigorous protest whenever the Union Pacific Company delivered goods to the Denver & New Orleans road for transportation, although such delivery was in accordance with the express directions of the owner of the property. The evidence shows that the shipping directions in reference to the goods in controversy were wilfully violated by the Union Pacific Company, and we think, under the evidence, the court below was justified in holding the Denver & Rio Grande Company also responsible for such violation.

This company having been a party to an illegal contract providing not only for a violation of the owner's routing directions, but calculated also to prevent notice of such directions from reaching the second carrier, cannot be shielded in this instance because no witness was able to swear in direct terms that it had notice of the owner's directions in reference to the shipment of these particular goods. Under these circumstances we are of the opinion that the court below was warranted in finding that the possession of the property was not obtained in good faith by the defendant in the ordinary or usual course of business between connecting carriers, but that such possession was wrongful and illegal, and that the defendant was consequently not entitled to a carrier's lien upon the same, either for its own charges or those advanced to the former carrier, and therefore there was no error in entering judgment for plaintiff. Redf. Carr. § 271 *et seq.; Fitch v. Newberry, supra; Robinson v. Baker,* 5 Cush. 137; *Andrew v. Dieterich,* 14 Wend. 31; *Briggs v. Railroad Co., supra.* The judgment is accordingly affirmed.

*Affirmed.*

CHIEF JUSTICE HELM not sitting.