[No. 578.   Decided January 26, 1893.]

NANCY E. MOSES, *Respondent*, v. PORT TOWNSEND SOUTH-
      ERN RAILROAD COMPANY, *Appellant.*

CARRIERS — TRANSPORTATION OVER CONNECTING LINES — LIEN OF
   SUBSEQUENT CARRIER — DAMAGES — EVIDENCE OF CUSTOM.

Where goods are delivered to a carrier for shipment to a desti-
nation beyond the route of the carrier, the freight being prepaid,
such carrier becomes the forwarding agent of the owner, and suc-
ceeding carriers, to whom the goods are delivered by the first car-
rier, are not bound by the contract between the owner and the first
carrier as to freight charges of which they have no knowledge, un-
less such want of knowledge is due to the negligence of the suc-
ceeding carrier.   (DUNBAR, J., dissents.)

In an action against a railroad company for damages for keeping
horses for a number of days upon a plank floor after their arrival
at the destination to which they had been shipped, evidence is ad-
missible of a custom to keep horses upon plank floors in that local-
ity, and that it is impracticable to keep them upon earth floors.

   *Appeal from Superior Court, Thurston County.*

   *Andrew F. Burleigh,* for appellant.

*David E. Baily,* and *William S. Church,* for respondent:

   Whether a contract for the carriage of goods from one
point to another over connecting lines of railroad is a
through contract, and whether succeeding carriers receiv-
ing and transporting goods turned over to them by the
initial carrier have knowledge of such contract, are ques-
tions of fact solely for the jury to determine; and in the
determination of these facts it is proper for the jury to
take into consideration the bill of lading and evidence of
any other circumstances tending to show what the transac-
tion really was, and the carrier's knowledge of it. *Gray v.
Jackson,* 51 N. H. 9; *Pereira v. Central Pacific R. R. Co.,*
66 Cal. 92; *Railroad Co. v. Pratt,* 22 Wall. 123; *Halliday
v. St. Louis, etc., Ry. Co.,* 74 Mo. 159; *Cutts v. Brainerd,*

42 Vt. 566; *Evansville, etc., R. R. Co. v. Marsh*, 57 Ind. 505; *Illinois Central R. R. Co. v. Frankenberg*, 54 Ill. 88; *Adams Express Co. v. Haynes*, 42 Ill. 89.

A carrier receiving goods from another carrier with knowledge that a through contract has been made and the charges paid in advance, has no lien thereon for carrying them over his line. *Marsh v. Union Pacific R. R. Co.*, 9 Fed. Rep. 873; *Travis v. Thompson*, 37 Barb. 236; *Fitch v. Newberry*, 1 Doug. (Mich.) 1; *Robinson v. Baker*, 5 Cush. 137; *Stevens v. Boston, etc., R. R., Co.*, 8 Gray, 266.

Each successive carrier over connecting lines of railroad becomes the agent of its predecessor, the first carrier being the principal. Being thus connected, there is a privity between them all from the first to the last, and a through contract being made with the first carrier, the subsequent carriers are regarded in law as acting in subordination to that contract, without proof that they had actual knowledge of it. Hutchinson on Carriers (2d ed.), § 273; *Nanson v. Jacob*, 12 Mo. App. 127; *Falvey v. Georgia R. R.*, 76 Ga. 597; *Halliday v. St. Louis, etc., Ry. Co., supra.*

The opinion of the court was delivered by

SCOTT, J.— In April, 1891, the respondent made a contract with the Burlington & Missouri River Railroad Company in Nebraska for the transportation of a car loaded with household goods and horses. A memorandum of this contract, in the form of a shipping receipt, or way bill, was given to the respondent by said company, which is as follows:

"No. ——.          HADDAM, KANSAS, April 23d, 1891.

Received from N. E. Moses, in apparent good order, by the Burlington & Missouri River Railroad Company in Nebraska, to be transported to ...............Beatrice ............. the
(Do not insert point not on this road.)
following articles as marked and described below, subject to the conditions and regulations of the published freight

tariff of the said company (see extract on back hereof), it being expressly agreed and understood that the said Burlington & Missouri River Railroad Company in Nebraska, in receiving the said freight to be forwarded as aforesaid, assumes no other responsibility for its safety than may be incurred on its own road.

| Marks and Consignee; description of articles as given by consignor. | | | Weight. |
|---|---|---|---|
| N. E. Moses, Olympia Washn. Car 18398. Q. | Original. | One car Emg. Movs. & Stock, 6 head horses, H. H. Gds. Rel. to val. $5 per Cwt., P. Pd. $200.00. E. M. HENRY, Agent. | 20,000. B. & M. R. R. in Neb. Haddam, Kansas, April 23, 1891. |

On the back of said exhibit was printed the following:

### "NOTICE TO SHIPPERS.

"This company will not be responsible for any damages occasioned by delays from storm, accident or other cause, leakage of oil or liquids, injury to or abstraction of the hidden contents of packages, or by decay of perishable articles, or injury by heat or frost to such articles as are affected thereby; or by reason of improper packing when received at their depots. Nor will it be responsible for any property until receipted for by a duly authorized agent; nor will they hold themselves liable for damages by fire, or as common carriers for any articles after arrival at their place of destination on this road.

"GRAIN.— Grain in bulk to be loaded and unloaded by shipper; will be at owner's risk of short weight, except when caused by collision, running off the track, or by carelessness of the agents of this company; no receipt will be given for any quantity of grain in bulk, nor any number of sacks when loaded by shipper, except more or less, and the company will not be responsible for any discrepancy in the number of sacks when thus shipped. When freight is not taken away within 24 hours after its arrival at destination, it may be put in store subject to charges and customary storage and commission.

"SPECIAL.

"Shippers of grain must give agents shipping directions in writing, as no errors arising from verbal directions will be recognized."

The Burlington & Missouri River Railroad Company had no through line to Olympia, nor any traffic agreement with the connecting lines running to said point. Said railroad company hauled the car to Beatrice, Nebraska, the point of destination on its line inserted in the way bill, and there delivered it to the Union Pacific Railroad Company, which company transported it to Portland, Oregon, at which point it was, by said last named company, delivered to the Northern Pacific Railroad Company, and was by it transported to Tenino, in this state. The appellant received the car at Tenino, from the Northern Pacific Railroad Company, and hauled it to Olympia. Upon applying for her goods at this place, the respondent was informed that there was $89.25 due thereon for transporting the car from Portland to Tenino, which sum appellant had advanced to the Northern Pacific Railroad Company on receiving the car, and the further sum of $10 due appellant for transporting the car from Tenino to Olympia, for which, together with $1.50 for switching, appellant claimed a lien upon the chattels, and refused to deliver the same until such sums were paid. The respondent refused to make these payments, and brought this action to recover the property and for damages for its detention. A trial by jury was had, which resulted in a verdict and judgment for the respondent for a return of the property, and for the sum of $100, damages. Whereupon the cause was appealed to this court.

It is not questioned but that the charges amounting to $100.75, for hauling the car from Portland to Olympia, and for switching, are reasonable; but the respondent contends that as she stipulated for the carriage of the goods

to Olympia for the sum of two hundred dollars, and paid the same to the Burlington & Missouri River Railroad Company, that she could not be called upon to make any further payment, and that the appellant and all other transportation companies hauling said car must look for payment to the aforesaid railroad company with which she contracted.

At the trial appellant offered to show that at the time the Northern Pacific Railroad Company took the car at Portland, it had no notice that respondent had made any arrangement with the Burlington & Missouri River Railroad Company for the transportation of the car to Olympia, or that any freight had been paid thereon; and that appellant had no knowledge thereof prior to the arrival of the car at Olympia. The court refused to permit this proof, to which ruling the appellant excepted, and alleges the same as error.

The custom of railroad companies in assuming back charges on goods delivered to them and paying the same, and for the last carrier to collect such amount together with its own charges from the consignee, is well established. Also, that every railroad company has a lien for freight charges of its own, and for charges of previous carriers which it has paid or assumed. This custom is founded on commercial convenience and necessity, and is now well recognized, and the last carrier has the right to retain the goods until its own charges are paid, and all back charges due in transit, including storage charges. And the last carrier has a lien therefor, even if the charges exceed the guaranteed rate, providing it had no notice of such guaranty.

When a consignor delivers goods to a carrier to be carried over successive routes beyond the routes of the first carrier, he makes the first carrier his forwarding agent, and

the first carrier who receives the goods and directs them over the route of the succeeding carrier, is the owner's agent, and the succeeding carriers act under the authority of the owner, and this has ordinarily been held to be the rule even though the first carrier did not follow the instructions of the shipper, where the succeeding carriers acted innocently.  1 Jones on Liens, §§ 291, 292, 294 and 297; *Vaughan v. Providence, etc., R. R. Co.*, 13 R. I. 578; *Briggs v. Boston, etc., R. R. Co.*, 6 Allen, 246; *Bird v. Georgia Railroad*, 72 Ga. 655; *Patten v. U. P. Ry. Co.*, 29 Fed. Rep. 590; *Wells v. Thomas*, 27 Mo. 17.

The contract between appellant and the Burlington & Missouri River R. R. Co. was not a through contract. This company stipulated to carry the freight only to Beatrice, Nebraska, a point upon its own line where it connected with the Union Pacific Railway Company, and it expressly stipulated that in receiving said freight to be forwarded as aforesaid, it assumed no other responsibility for its safety than for such loss as might be incurred on its own road.  See *Schneider v. Evans*, 25 Wis. 241.  The authority to turn it over to a succeeding carrier is clearly implied and was a necessary incident under the circumstances, and upon safely delivering the freight to the next carrier at Beatrice its duties as to the handling of the freight were performed.  It also agreed that the sum to be paid for the entire distance should not exceed $200, and its further liability after delivering the goods to the succeeding carrier could only arise upon this agreement.

A subsequent carrier having no knowledge thereof or of the prepayment of the freight, would in no wise be bound thereby unless the want of such knowledge should in some way be due to its own negligence.  The authorities are not uniform upon this proposition, but the weight of them sustain it.  1 Jones on Liens, §§ 294, 295, 297 and 298; *Wolf v.*

*Hough*, 22 Kan. 659; *White v. Vann*, 6 Humph. 70.  The
way bill in queston, showing the prepayment of the freight,
would presumptively afford information to each carrier of
that fact.  Jones on Liens, § 296.   But this is not a con-
clusive presumption.   It is possible that the succeeding
carriers had no such knowledge, and without fault of theirs.
The proof in relation thereto should. have been admitted.
If the subsequent carriers did have knowledge of the agree-
ment made by the respondent with the Burlington & Mis-
souri River R. R. Co., or if not having it the circumstances
were such that they should be held bound by it in conse-
quence of any neglect in not seeking to inform themselves,
they would have no claim against the respondent for their
transportation charges.

The plaintiff claimed that the horses had been injured
by the defendant by keeping them for eight days upon a
plank floor after their arrival at Olympia, and the damages
were recovered upon this ground.  Appellant contends
that the court erred in not permitting it to show that it is
customary to keep horses upon plank floors in this locality,
and that it is impracticable to keep them upon earth floors.
The respondent insists that whatever may be the custom
with regard to the keeping of horses generally, appellant
failed to exercise due care in so keeping these particular
animals, in consequence of their having been immediately
preceding then confined for some time in the car during
transportation, and that this continued subsequent confine-
ment upon a plank floor would necessarily result in a serious
injury to them.   These are questions of fact for the jury,
and, being so, testimony in relation thereto is of course ad-
missible.   Appellant was bound to exercise reasonable care
in keeping the property, and would only be liable in case
of a failure to do so.

Reversed.

ANDERS, STILES and HOYT, JJ., concur.

DUNBAR, C. J. (*dissenting*). — I dissent.    The only way the majority opinion can be sustained is by invoking the doctrine of general agency.    The idea of general agency in this character of cases is purely artificial and has no foundation in fact or in the understanding of the parties to the contract.    An agency is not an artificial condition, but it is a real condition or relative position of parties based upon a contract, upon the real understanding and intention of the parties; and the agency, so far as the parties to the contract are concerned, cannot go beyond the intention of the parties at the time the contract was made.

What was the understanding of the parties to this contract?    Plainly, that the Burlington & Missouri River Railroad Company should deliver respondent's goods in Olympia for an agreed price, which the respondent paid in advance to that company.    Here was a special agency created to do a special thing.    There is no semblance here of a general agency, and under the undisputed rule, he who deals with a special agent deals at his peril and is bound to take notice of the exact powers conferred.

Neither is there any element of apparent authority in this case.    If the contract which Mrs. Moses made with the Burlington Company can be construed as clothing that company with apparent authority to bind her to pay more than she agreed to pay for the transportation of her freight to Olympia, then the distinction between a general and special agency can always be obliterated by the plea of apparent authority.    What is it that is made apparent by this contract?    If the Union Pacific and subsequent transportation companies had taken the trouble to look at the bill of lading, one thing certainly would have been apparent, and that apparent thing was that the freight had been paid on the goods clear through to their destination at Olympia.    The exercise of ordinary business care would

have brought this notice home to the company that received the goods from the Burlington Company.

It is conceded that if the company had had the notice its lien could not attach.  Shall it be allowed to change the responsibility of the owner by refusing or neglecting to take notice which was within its reach?  There is no privity between these connecting companies and the shipper, but there is privity between the connecting companies and the company from which they received the freight.

It is in perfect harmony with the natural order of business, that he who is employed must look to his employer for his recompense, and I see no good reason for changing the rule in the interest of transportation companies.  These companies deal with each other; they are familiar with the business transactions of each other; most frequently have traffic arrangements; at all events they can easily make such arrangements between themselves, if they see fit.  The business is for their mutual benefit, and it is no hardship to hold that the company which procures another company to forward its freight should be taken to be its agent to carry the goods forward.

A different rule altogether prevails where the charges have not been paid.  There the party sees fit to put his goods in the care of any number of companies that is necessary to transport them.  He knows that of necessity they must be carried by different companies, and that each company is entitled to a fair consideration for its services; that in order to insure their transportation without payment in advance the companies respectively are entitled to a lien to secure their payment.  This knowledge becomes incorporated into his contract.  He is presumed to have contracted with reference to it.  And here the doctrine of apparent authority attaches, and the shipper is presumed to have consented to the attachment of a lien to secure the freight charges.  And when the extending company makes

the ordinary inquiry and ascertains that the freight is in this condition, it takes it, and its lien attaches upon this implied consent.    For it must be borne in mind that the lien can only attach upon the idea of consent, expressed or implied, in the contract made with the owner.    But where can we get the idea of consent in this case?    It is certainly not expressed; it is just as plainly not implied.    Not only so, but the very transaction itself negatives the idea of consent; for the respondent paid the charges to Olympia, the point of destination, and she certainly did not consent to pay the charges twice.    And yet, if the doctrine of the majority is sustained, it must be upon this unreasonable hypothesis.    It is a well settled principle that a wrong-doer cannot confer on a carrier a right to assert a lien against the true owner, because the owner cannot be divested of his property without his consent.

I think, then, that in an executed contract of this kind, executed at least on the part of the shipper by the payment of through freight charges in advance, as agreed upon, each successive carrier over connecting lines of railroads becomes the agent of its predecessor; that each successive carrier acts in subordination to the contract and must be held to take notice of the conditions of the contract.    And I think the doctrine is well established, that in cases of connecting carriers, the succeeding carrier is the agent of the initial or first carrier.    The rule is thus laid down by Hutchinson on Carriers, § 273:

"Whenever, therefore, as in England and in many of the states of this country, upon the delivery of goods to a common carrier, consigned to a particular point, the law obliges him to become responsible for the carriage to that place, all subsequent carriers who may be employed to aid in the through transportation do so as agents of the carrier to whom they are first delivered, and are protected by his contracts."

In this case the goods were delivered to the Burlington

Company, consigned to a particular point, viz., Olympia. The law obliges that company to become responsible for their carriage to that place, because it had received the pay for the through transportation.     Consequently, according to the text, the Union, the Northern and the Port Townsend Southern were the agents of the Burlington Company.

"When goods are sent, not according to the contract with the owner, but by some other route, there is no lien for freight money;" and if the goods are withheld under a claim of lien, an action of trover will lie for the value. *Marsh v. Union Pacific R. R. Co.*, 9 Fed. Rep. 873.

"The connecting carrier by receiving the goods from the contracting carrier, becomes its agent for the purpose of completing the contract with its shipper." *Halliday v. St. L., etc., Ry. Co.*, 74 Mo. 159.

To the same effect: *Fitch v. Newberry*, 1 Doug. (Mich.) 1; *Buskirk v. Purington*, 2 Hall, 561; *Robinson v. Baker*, 5 Cush. 137.

If a bill of lading or way bill accompanying the goods shows that the freight has been paid wholly or in part for the through route, the succeeding carriers would be affected with knowledge of such payment, for if they consult the bill of lading they will have actual knowledge, and if they do not consult it they may be regarded as guilty of negligence and constructively affected with knowledge of what the bill of lading actually shows.     1 Jones on Liens, § 297. This was the view the court took of the law in this case, both in sustaining objections to the testimony offered and in its instructions to the jury.

Most of the cases cited by the majority base their arguments upon the theory that transportation companies are *compelled* to receive and forward freight.     If that were so, then there would be some equity and justice in holding that they would have a lien for their services in any event. But such is not the law.     If a connecting company is not satisfied with the responsibility of the company which has

the goods in charge, in the first instance, it can demand its pay in advance, and if it is not paid it need not carry the goods. The law on that subject is well settled.

In my judgment there was no error committed in the trial of this cause, and the judgment should be affirmed.