**UNITED STATES v. CHICAGO, R. I. & P. R. CO. et al.**

No. 14123.

United States Court of Appeals Fifth Circuit.

Dec. 8, 1952.

R. Daniel Settle, Asst. U. S. Atty., Fort Worth, Tex., for appellant.

John A. Kerr, Jr., Fort Worth, Tex., for appellee.

Before HOLMES, RUSSELL, and STRUM, Circuit Judges.

HOLMES, Circuit Judge.

The Government seeks to reverse a holding that the limitation for the giving of notice of loss or damage, contained in a Uniform Domestic Bill of Lading, under which certain grain was shipped by the Commodity Credit Corporation, operates as a bar to recovery of damages by such corporation. The grain was shipped during February and March, 1948, and arrived at its destination during those months. Claims for shortages were filed with the railroad on December 21 and 28, 1948, more than nine months after delivery, and liability therein was denied by the companies.

This suit was filed on April 26, 1951. The bills of lading issued by the railroad contained a provision to the effect that, as a condition precedent to recovery for such loss or damage, a claim in writing must be filed with the carrier within nine months after delivery of the property, or within nine months after the lapse of a reasonable time in the case of failure to make delivery, and that suits should be filed within two years and one day from the date when notice in writing was given by the carrier that the claim had been disallowed.

Conceding that statutes of limitation may not be asserted as defenses against the claims of the Government, appellee contends that the bills of lading are contracts which the corporation had authority to make, and that the limitations contained therein are binding upon the Government. The appellant contends that it is not bound by the provisions in the bills of lading because they are in accordance with the regulations of the Interstate Commerce Commission, which have the force and effect of law, since the Government is not and cannot be barred by legal limitations in the absence of an act of Congress so providing.

The bill of lading, issued by the railroad company and accepted by the Commodity Credit Corporation, is the contract that governs the movements of each shipment in question. It is not disputed that the particular limitations above mentioned were contained in each bill of lading at the time the contract of transportation came into existence. Therefore, they are just as much a part of the contract as any other clause or paragraph therein. Such a provision, many times, has been held valid as to ordinary shippers. Northern Pacific Railway Company v. Mackie, 9 Cir., 195 F.2d 641.

■■■■ The appellant does not contend that the Commodity Credit Corporation lacked authority to enter into these contracts concerning the transportation of commodities owned by it. To the contrary, it admits that Section 714b (g) and (h) of the Commodity Credit Corporation Charter Act, 15 U.S.C.A. §§ 714b and 714c gave the corporation authority to contract for the transportation of agricultural commodities such as were shipped here, and to utilize the usual facilities of trade and commerce. Section 714c also expressly provided that the corporation should make available the facilities required in the marketing of agricultural commodities. Thus the Congress not only gave the Commodity Credit Corporation the general power to make contracts necessary to carry on its business, but made it obligatory upon said corporation to utilize the usual and customary channels, facilities, and arrangements of trade and commerce. To enter into such contracts, we think, is but the utilization of the customary facilities and arrangements of trade and commerce.

The real question in this case is whether the Government is bound by the limitations in the contract of shipments into which it has entered with the railroad company. As said by the Supreme Court in St. Louis B. & M. Ry. v. U. S., 268 U.S. 169, 173, 45 S.Ct. 472, 473, 69 L.Ed. 899: "In respect to furnishing transportation, a railroad ordinarily bears to the government the same relation that it does to a private person using its facilities." To quote with approval from the opinion in the case of U. S. v. Seaboard Air Line Ry. Co., 4 Cir., 22 F.2d 113, 116:

"It should be borne in mind that the clause of the commercial bill of lading relied on is one of the terms upon which the parties agreed when the goods were accepted for shipment by the carrier. There is nothing in it unreasonable or contrary to public policy. Its purpose was to provide for the as-

certainment of liability before the means of proof should be lost, and there is every reason for applying it to shipments by the government that exists in other cases. We know of no principle of law under which the government, after receiving the benefits of a contract into which it has lawfully entered, can repudiate the conditions upon which the contract was made. It is suggested that the officer of the government who made the shipment was without authority to agree to a limitation on the right of the government to sue; but it is admitted that he had authority to make the shipment on the government bill of lading, and that instrument itself, as we have seen, incorporates by reference the condition limiting the time for suit."

The Government attempts to distinguish the Seaboard case by pointing to the fact that the bill of lading there interpreted was drafted by the Government, but we find nothing controlling in this distinction, and think the judgment appealed from should be affirmed.

Affirmed.