The UNITED STATES of America, Plaintiff,

v.

Frederick A. BETHKE, individually, and doing business as the Bethke Truck Lines, Defendant.

Civ. No. 4301.

United States District Court
D. Colorado.
June 9, 1955.

**24**

Donald E. Kelley, U. S. Atty. for Dist. of Colorado, Denver, Colo., Robert D. Inman, Asst. U. S. Atty. for Dist. of Colorado, Boulder, Colo., Clifford C. Chittam, Asst. U. S. Atty. for Dist. of Colorado, Denver, Colo., for plaintiff.

Marion F. Jones, E. B. Evans, Denver, Colo., for defendant.

CHRISTENSON, District Judge.

This is an action by the Government of the United States to recover a claimed freight overcharge collected by the defendant truck lines.

From the admissions in the pleadings, the stipulations of the parties and from the evidence concerning the few facts which were not agreed upon, the Court finds that the Bethke Truck Lines was a common carrier during all times material herein; that as such common carrier it received a shipment of Government property consigned by the Philadelphia Quartermaster's Depot to an ROTC detachment at Fort Collins, Colorado, which shipment was originally received by Pacific and Atlantic Shippers' Association, a freight forwarder, shipped by it to Chicago, thence through Independent Truckers, Inc. from Chicago to Denver, and picked up at Denver and delivered to Fort Collins by the defendant truck line; that at the time of the shipment, Pacific and Atlantic Shippers' Association was a party to a contract with the Government, dated May 10, 1954, pursuant to Section 22 of the Interstate Commerce Act, as amended, 49 U.S.C.A. § 22, which contract provides, among other things, "That on less-than carload shipments moved by or for the account of the United States Government, the maximum rates to be charged shall not exceed the lowest standard less-than carload, all rail rates or charges"; that the rates as computed under the terms of the contract between Pacific and Atlantic Shippers' Association and the Government were $69.-71 less than the standard rates charged by Bethke Truck Lines on its own behalf and that of the initial and intermediate carrier; that the standard rates charged and collected by Bethke Truck Lines were in accordance with the regular published tariffs approved by the Interstate Commerce Commission for the respective carriers; that the "Section 22" rates contemplated by the contract between the Government and Pacific and Atlantic Shippers' Association were not contained in any tariff published by the Interstate Commerce Commission; that no notation of the special contract between the Pacific and Atlantic Shippers' Association and the Government appeared on the bill of lading or other papers received by defendant; that Bethke Truck Lines received the shipment without knowledge of the special rates chargeable under the contract, and was requested by the Independent Truckers, Inc., the intermediate carrier, to charge the regular published rates; that the regular rate of $4.62 was assessed from Philadelphia to Denver and that Pacific and Atlantic Shippers' Association's proportion of the total freight charge of $309.54 between these points was $205.-69 and that Independent Truckers, Inc.'s proportion of the $309.54 was $103.85 and that in addition, the defendant assessed his regular rate of 57 cents from Denver to Fort Collins, or a total charge of $38.22; that for the total charges, defendant presented a voucher to the Government for $347.76 which was paid; that on November 3, 1947, the defendant remitted to Independent Truckers, Inc. $309.54, representing the charges on the through rate from Philadelphia to Denver; that on August 21, 1950, the Gov-

ernment presented a claim for overcharge to the defendant on the theory that the lowest standard less-than carload all rail rate to which it was entitled under its "Section 22" contract with the Pacific and Atlantic Shippers' Association was $4.15, making the alleged correct charge $278.05, the overcharge claim being $69.71, the amount sued for in this case.

The defendant contends that the Government's cause of action, if any it has, exists against the Pacific and Atlantic Shippers' Association and not against the defendant; that defendant is the terminal carrier and was not a party to any through rates, Philadelphia to Fort Collins, or any "Section 22" quotation; that he was entitled to collect his full tariff rate for shipment, Denver to Fort Collins; that he had no notice and was charged with no notice of the special "Section 22" agreement between the Government and the Pacific and Atlantic Shippers' Association, was not bound by any such agreement and had the right to submit voucher for, and remit, charges based upon the regular tariffs; that the "Section 22" contract itself provided that the Pacific and Atlantic Shippers' Association would be deemed both the receiving and delivering carrier and that having retained only his lawful charge, he cannot be called upon to make any reimbursement or pay any damages based upon a violation, if any, by Pacific and Atlantic Shippers' Association of its contract with the Government.

The plaintiff argues that the last carrier was the party responsible for completing the vouchers and documents required for payment; that such payment is distributed by the last carrier to the inter-line carriers according to their billings; that there is no assurance that the Pacific and Atlantic Shippers' Association actually received the excess charge or any part of it and that, therefore, suit against it might be unavailing and that defendant, being the agent of the originating carrier, is responsible for refunding the entire overcharge. "The payment of the overcharge was ad-mittedly made to the defendant," the plaintiff argues. "It is obviously from him that the return of the overcharge should come."

I see nothing in the statutes which indicates the result contended for by the Government. 49 U.S.C.A. § 317(a, b); 49 U.S.C.A. § 1005(c); 49 U.S.C.A. § 22; 49 U.S.C.A. § 1002; 49 U.S.C.A. § 304(a); 49 U.S.C.A. § 1006(a); 49 U.S.C.A. § 16; 49 U.S.C.A. § 20.

Plaintiff cites the latter statute as an indication that the defendant was the agent of Pacific and Atlantic Shippers' Association in making the overcharge. It does not appear that the statute cited governs recovery for overcharges. It does relate specifically to loss, damage or injury to property. However, if we assume that the defendant were agent of the Pacific and Atlantic Shippers' Association, this would not have the effect contended for by the plaintiff.

There is nothing that I can find in the statutes or in the decisions thereunder which indicates that the contract entered into between the Government and the Pacific and Atlantic Shippers' Association is binding upon the other carriers who handled the shipment in the absence of some agreement, express or implied, on the part of the latter, or at least without some showing that the carriers had notice of the "Section 22" contract when handling the goods. In a sense, the Pacific and Atlantic Shippers' Association, as freight forwarder, was a shipper and not a carrier. Chicago, Milwaukee, St. Paul & Pac. R. Co. v. Acme Fast Freight, Inc., 336 U.S. 465, 69 S.Ct. 692, 93 L.Ed. 817; United States v. Chicago Heights Trucking Co., 310 U.S. 344, 60 S.Ct. 931, 84 L.Ed. 1243.

"Section 22" contracts are permissible and not mandatory. Nashville, C. & St. L. Ry. v. State of Tennessee, 262 U.S. 318, 43 S.Ct. 583, 67 L.Ed. 999; Hughes Transp., Inc., v. United States (Commonwealth of Kentucky v. United States), 1954, 121 F.Supp. 212, 128 Ct. Cl. 221; United States v. Aberdeen, etc., R. Co., 289 I.C.C. 49, 63–67; Interstate

Rates Between Points in Missouri, 181 I.C.C. 259, 273.

■ No privity of contract between the defendant and the freight forwarder appears. In the absence of such privity, the legally published tariff rates should apply since the shipper and the carrier other than pursuant to Section 22, 49 U.S.C.A., could not avoid or enlarge such tariffs. Keogh v. Chicago & N. W. Ry. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; United States v. Kansas City Southern Ry. Co., D.C.W.D.Mo.W.D.1953, 116 F.Supp. 484, reversed and remanded, 8 Cir., 217 F.2d 763.

■ In furnishing transportation to the federal government a carrier ordinarily bears the same relationship to the government as it does to a private citizen using its facilities. United States v. Chicago, R. I. & P. R. Co., 5 Cir., 1952, 200 F.2d 263.

In the absence of a special arrangement under "Section 22" binding upon the defendant by reason of some concurrence on its part, privity of contract or at least conscious acquiescence, the published rates should apply as far as the defendant is concerned. Atchison, T. & S. F. Ry. Co. v. United States, 256 U.S. 205, 41 S.Ct. 456, 65 L.Ed. 891; Wheelock v. Walsh Fire Clay Products Co., 8 Cir., 1932, 60 F.2d 415; Patten v. Union Pac. Ry. Co., C.C.D.Colo.1886, 29 F. 590; Oden-Elliott Lumber Co. v. Louisville & N. R. Co., 201 Ala. 667, 79 So. 139; Moses v. Port Townsend S. R. Co., 5 Wash. 595, 32 P. 488, 1000; Denver & R. G. Ry. Co. v. Hill, 13 Colo. 35, 21 P. 914, 4 L.R.A. 376; Price v. Denver & R. G. Ry. Co., 12 Colo. 402, 21 P. 188; Elliott, 3d Ed., Article 2191, p. 593; Ibid, Article 2365; Hutchinson on Carriers, Article 867, p. 964.

■ The plaintiff now seems to concede that the defendant was not a party to, and was not bound by, the "Section 22" agreement and had no notice of it. On final summation, it rests its case on the theory that the defendant was the agent of the freight forwarder. Thus, in its brief, the Government states that "To prevail in this action it is necessary that the Government pursue its claim on the theory that the destination carrier, Bethke, was the agent of the initial carrier for the collection of the charges due for shipment." The Government bases its theory of agency in part at least on the Carmack Amendment, 49 U.S.C.A. § 20, and the case of Galveston, Harrisburg and San Antonio Railway Company v. Wallace (Galveston, Harrisburg and San Antonio Railway Company v. Crow), 223 U.S. 481, 32 S.Ct. 205, 56 L.Ed. 516; Williamson-Inman Co., Inc., v. Nashville, C. & St. L. Ry., 44 Ga.App. 129, 160 S.E. 687. As indicated above, the Carmack Amendment deals with loss, damage or injury to property and does not seem pertinent to the question at hand. Nevertheless, let it be conceded that Bethke, in a sense, was the agent of the initial carrier for the collection of charges due it. This, in a broad sense, must be true because the charges were actually collected by Bethke for the benefit, at least in part, and under the instruction, of the Pacific and Atlantic Shippers' Association. It does not follow, however, that through the mere relationship of principal and agent with respect to collection, the agent becomes liable to refund a collection which he has remitted to, or on order of, his principal. If agency existed it was not a concealed, unknown relationship, but a relationship plainly arising from the transaction itself. It is also clear that in collecting and remitting the charges the defendant acted in good faith and without notice of the present claims of the Government. A recovery back of money paid to a disclosed and innocent agent ordinarily is not permitted where the money has been paid over by the agent to his principal in good faith without notice of the claim for its return. Hirning v. Federal Reserve Bank of Minneapolis, Minn., 8 Cir., 1931, 52 F.2d 382, 82 A.L.R. 297; Mountain Lumber Co. v. Davis, D.C.S.D.N.Y.1925, 9 F.2d 478, affirmed, 2 Cir., 11 F.2d 219, certiorari denied 271 U.S. 674, 46 S.Ct. 488, 70 L.Ed. 1145; Insurance Co. of

North America v. Fourth Nat. Bank of Atlanta, D.C.N.D.Ga.1926, 14 F.2d 131, affirmed, 5 Cir., 28 F.2d 933, certiorari denied 279 U.S. 853, 49 S.Ct. 349, 73 L.Ed. 996; United States v. Pinover, D.C.S.D.N.Y.1880, 3 F. 305; Boone v. Hall, 100 Cal.App.2d 738, 224 P.2d 881; 3 C.J.S., Agency, § 217A, pages 126–127.

▮ If the result indicated in these authorities necessarily rested upon the theory of estoppel, it would be doubtful that the Government would be foreclosed thereby. However, the absence of the cause of action against a defendant who in good faith has paid collected money to his principal rests primarily upon the relationship of principal and agent itself which precludes under such circumstances the liability of the agent, rather than upon the theory of change of position by a payee so as to prevent recovery of a payment made under mistake on the theory of estoppel. The latter subject is covered in an annotation in 40 A.L.R. 2d 997, et seq. That annotation, however, places the agency question on a different foundation in the following language, at page 1008:

"Where a payment is made by mistake to one who is known to be an agent and he turns the fund over to his principal, the situation is such that it might ordinarily come within the scope of this section. However, the courts have crystallized such rules with respect to such payments and do not ordinarily discuss the case from the point of view of a change in position. In this connection see the annotation in 82 A.L.R. 307 on personal liability of agent in respect of funds received from third persons and turned over to principal not entitled thereto, and see 2 Am.Jur. 264–266, Agency, §§ 335–341."

This is not a case where lack of authority to make a payment appears. By reason of the long lapse of time between the payment and the claim for refund, and in view of the payment upon voucher in due administrative course, the record does not suggest any failure of action on the part of the appropriate officers of the Government. See Cooke v. United States, 91 U.S. 389, 23 L.Ed. 237; Haskins Bros. & Co. v. Morgenthau, 1936, 66 App.D.C. 178, 85 F.2d 677, certiorari denied 229 U.S. 588, 57 S.Ct. 118, 81 L.Ed. 433.

▮ There seems no reason why the United States should enjoy a preferred position with respect to a claim for refund. United States v. Chicago, R. I. & P. R. Co. et al., supra; Hughes Transp., Inc., v. United States (Commonwealth of Kentucky v. United States), supra; Southern Pac. Co. v. United States, D.C. D.Del.1950, 93 F.Supp. 411, affirmed, 3 Cir., 192 F.2d 438.

▮ I conclude, therefore, that the plaintiff is not entitled to recover the alleged overcharge from the defendant. On the basis of this opinion, which will serve as the findings of fact and conclusions of law, form of judgment will be submitted by the defendant for the approval of the Court, denying recovery herein, without the allowance of costs.